NUNZIO FRATTALLONE DI GANGI, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, DANIEL E. LÓPEZ PRITCHARD, JUDGE, Respondent; HULL DOBBS CO. and HARRY DOHNERT, Interveners.

No. C-66-82. Decided February 24, 1967.

*J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for petitioner. *Orlando J. Antonsanti* and *Ernesto González Piñero* for interveners.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The Department of Justice, through prosecuting attorney Nunzio Frattallone Di Gangi, initiated an investigation to determine the illegal use of the stickers issued by the Secretary of Public Works to be affixed to the motor-vehicle license plates. Section 2-402 (b) of the Vehicle and Traffic Law, 9 L.P.R.A. § 482. As a result of a report of the Comptroller's Office it was revealed that some dealers engaged in the practice of obtaining, by the payment of minimum license fees, stickers for used vehicles and vehicles of previous models which were then used on new vehicles or on vehicles of more recent models, thereby evading the payment of the higher fees prescribed by law for this last kind of vehicles.

On March 23, 1966, the above-mentioned prosecuting attorney summoned Mr. Kenneth G. Lancaster and Mr. Harry Dohnert, executives of the enterprise Hull Dobbs Company of Puerto Rico, to appear on April 19 for the purposes of the aforementioned investigation, notifying them that if they failed to appear they would be considered guilty of a violation of Act No. 3 of March 18, 1954, 34 L.P.R.A. §§ 1476–1479. A note was added to the summons to read as follows: "Bring with you all the documents concerning the acquisition of stickers as specified in the attached relation which is attached hereto and is a part of this summons for all legal purposes." In the relation referred to, the sticker's number, the automobile's make and model, the number of the license or plates issued, are identified and with respect to the check with which the payment was made, its number, date, and

amount.[1] In compliance with the summons, Mr. Dohnert,[2] who admitted to be the official who had under his custody the documents and records of the mentioned corporation, *appeared* on the date indicated and informed that he could only produce the canceled checks to which the relation referred. In view of this situation the prosecuting attorney informed that the checks were only part of the documents required, it being requested then by Dohnert and his attorney, Mr. B. Sánchez Castaño, that a term be granted to look for the other documents in question. On May 12, date fixed for the production of the documents, they *appeared* again and informed as to their willingness to produce the checks and "that they did not have any other document related to the acquisition of the stickers."

In view of this position assumed by the representative of Hull Dobbs Company of Puerto Rico, the prosecuting attorney appealed to the Superior Court, San Juan Part, by a petition which he entitled "motion" wherein he stated the facts previously stated, and moreover indicated that "these documents are necessary in an investigation . . . on possible offenses of False Pretenses (Misdemeanors and Felonies) and of violation of the Vehicle and Traffic Law, § 2-801 (misdemeanors), allegedly committed by Hull-Dobbs Company of Puerto Rico." It was also alleged that the basic information had been obtained from an auditing report of the Comptroller's Office, with which Mr. Sánchez admitted being acquainted, "and therefore, petitioner is convinced that those documents are in the hands of the Hull-Dobbs Company and that Mr. Donnell [*sic*] refuses to produce." He moved that Mr. Dohnert be summoned to appear before the court

---

[1] We note, in passing, that the relation which was attached to the petition for certiorari—it corresponds to the year 1965-66—is different from the one incorporated in the motion which gave rise to this proceeding before the trial court—it corresponds to the year 1964-65.

[2] Mr. Lancaster was away from Puerto Rico.

to testify and to produce the documents indicated, under penalty of contempt.

On May 20, after a hearing was held the trial court entered an order[3] for the issuance of the corresponding subpoena to Mr. Dohnert to appear bringing with him the documents listed in the addendum concerning 166 stickers. In this order reference is made for the first time to the fact that the request is based on the provisions of the third paragraph of Rule 235 of the Rules of Criminal Procedure of 1963, and in the summons the witness is warned that his disobedience may give rise to a prosecution "for contempt and/or [he shall] be guilty of a violation of the provisions of Act No. 3, of 1954."

---

[3] The order, copied to the letter, reads:

"In the above-entitled case a Motion duly sworn has been filed by the Special Prosecuting Attorney, Nunzio Frattallone Di Gangi, wherein it is stated that Mr. Harry Donnell, employee of the Hull-Dobbs Company of Puerto Rico, the address of which is Road 2, Km. 3.7, Monacillos Ward, Río Piedras, Puerto Rico, has been summoned to appear before said public official, bringing with him a series of documents, which were required to be brought with him before said official.

"Mr. Harry Donnell did not obey the summons issued by the Special Prosecuting Attorney, for which reason the latter requests that *in conformance with the provisions of the third paragraph of Rule 235 of the Rules of Criminal Procedure of 1963*, this Court issue a subpoena for his testimony under oath, and with the documents listed in said Motion.

"The facts alleged in the Petition having been established to the satisfaction of the Court, the Court HEREBY ORDERS that subpoena be issued by serving copy of this order on Mr. Harry Donnell, employee of the Hull-Dobbs Company of Puerto Rico, the address of which is Road 2, Km. 3.7, Monacillos Ward, Río Piedras, Puerto Rico, to appear before the Special Prosecuting Attorney, Nunzio Frattallone Di Gangi, on June 3, 1966, at 9:00 A.M. in the Offices of the Criminal Investigations Division, of the Department of Justice, located in Fortaleza Street, New York Department Store Building, 5th Floor, San Juan, Puerto Rico.

"Said witness should appear bringing with him the documents mentioned in the addendum attached to this order and which comprise 166 stickers. Said witness is warned that if he fails to obey the subpoena, he may be prosecuted for Contempt and/or be guilty of a violation of Act No. 3, of 1954.

"The parties will be served with copy of the order entered by the Court today."

The witness Dohnert requested that the order be set aside. A hearing was held during which no evidence was presented. In open court the trial judge set aside the order temporarily by means of the following decision:

"The Court, after hearing the statements of the parties, is going to set aside the order issued for the appearance of Mr. Harry Donnell, [*sic*] employee of Hull-Dobbs. This order was entered on May 20, 1966 for this person to appear on June 3, 1966 at 9:00 A.M. before the Special Prosecuting Attorney, Nunzio Frattallone Di Gangi. The Court has no doubt at all that pursuant to Rule 235 the prosecuting attorney . . . and the Rule says in its pertinent part: 'Any prosecuting attorney may . . . issue a subpoena for the attendance of witnesses and their examination under oath for the investigation of an offense. If a witness does not obey the subpoena, the court, at the request of the prosecuting attorney, shall issue an order for his appearance before said official on the date and at the time indicated, under penalty of contempt.' And subsection three of the law, that is, we correct, § 1 of Act No. 3 of March 18, 1954, establishes that 'Any person summoned as a witness by any prosecuting attorney or magistrate shall be bound to appear and testify or produce books, records, correspondence, documents, or other evidence required of him in any criminal investigation, proceeding, or process.'

"The Court has no doubt at all that the prosecuting attorney is perfectly entitled to summon any witness to appear with the documents he may deem pertinent, and if the witness fails to appear he may use an order of the Court to compel said appearance, except under penalty of contempt. However, the Court believes that in the manner in which the request has been made in this case has not been of such a nature as to require the Court to make use of its authority without first giving an opportunity to the persons aforementioned to produce specific documents. The Court believes that Mr. Harry Donnell [*sic*] may clarify, under oath and in a sworn statement, many of the facts unknown to the prosecuting attorney and if the prosecuting attorney would summon these persons to appear with specific documents and if they fail to do so the Court then understands that it would be in a situation wherein it should make use of the

power vested by law. But a petition in this manner, the Court believes should not be granted, insofar as in our opinion, the purpose of the law has not been complied with, because it should not be so completely general. Likewise the Court believes that since there are certain documents which are in the possession of the Executive Branch, and hence at the disposal of the prosecuting attorney, such means of proof should be exhausted before requesting other persons to produce such evidence.

"The Court sets aside, as we previously stated, the order entered on May 20, 1966, until the prosecuting attorney, by motion, informs the Court the specific documents he wants to be brought by the persons summoned, not on the basis of a general statement such as 'All the documents concerning such sticker', but a specific question, which must say: 'The license—for example—referring to said sticker', or 'Such and such a document', or 'Such and such invoice.' The prosecuting attorney can obtain that information from sworn statements given by those witnesses. Of course, if the witnesses refuse to testify, my colleague the prosecuting attorney has the means at law to obtain that statement. So this is the ruling of the Court.

"My colleague the prosecuting attorney will file the corresponding motion in due time, if the witness, Harry Donnell [sic] does not appear with the documents interested by the prosecuting attorney, after the legal steps we have mentioned."

Feeling aggrieved by the above-copied decision, the petitioner requested its review by way of certiorari which was timely issued. It is alleged that the trial judge erred (a) in his construction of Act No. 3 of March 18, 1954, 34 L.P.R.A. §§ 1476–1479; (b) in holding that the prosecuting attorney i) was bound to specify in more details the documents he wanted, and ii) to obtain, if possible, the required information from the public records before resorting to this proceeding; and (c) in setting aside the order without any evidence having been presented on the facts set forth by the parties in the course of the hearing.

1. Act No. 3 of March 18, 1954, *supra*,[4] known as the Witness Immunity Act, provides in the relevant sections that:

"Section 1.—Any person summoned as a witness by any prosecuting attorney or magistrate shall be bound to appear and testify or produce books, records, correspondence, documents, or other evidence required of him in any criminal investigation, proceeding, or process.

"Section 2.—If, having appeared, such person refuses to answer any question or to produce the evidence required alleging that it might incriminate him, the magistrate shall, motu proprio or at the request of the prosecuting attorney, make a record of the proceedings, and after hearing and setting forth on the record the allegation of the witness, he shall order him to answer the question or produce the evidence required, and such person shall be under obligation to comply with said order.

"Section 3.—When a person has obeyed such an order so given, he shall not be prosecuted, nor shall he be subject to any penalty or confiscation whatsoever with regard to any transaction, matter or thing concerning which he has testified or produced evidence, if from such testimony or evidence it actually appears that said person had the right to avail himself of the privilege of not testifying or producing evidence in order not to incriminate himself. Said person may, however, be indicted and shall be subject to penalty for any perjury, false answer, or contempt in which he may incur while answering or not answer-

---

[4] Act No. 3 substituted Act No. 13 of April 9, 1941 (Sess. Laws, p. 346), the aims and scope of which are discussed in *Batalla* v. *District Court*, 74 P.R.R. 266, 290–294 (1953). See also *Zapata* v. *Superior Court*, 79 P.R.R. 392 (1956); *People* v. *Quiñones*, 69 P.R.R. 682 (1949), and §§ 239 and 241 of the Code of Criminal Procedure.

The purpose of the Legislature in approving Act No. 3 is set forth in the report of the House Juridical Committee on S.B. 442, Journal of Proceedings 740–741 (1954), and in the clear recital made before said body by representative Mr. Polanco Abréu and in the debate which ensued, *op. cit.* pp. 741–757. In short, it was sought (a) to eliminate the automatic immunity which protected the witness summoned as soon as he testified under oath without need to claim the privilege against self-incrimination, and (b) to limit the immunity to the offense object of the investigation and not to others arising from the testimony of the witness before the magistrate or the prosecuting attorney.

ing, producing or not producing evidence, according to the order given by the magistrate."

 It may be noted that § 1 of the Act merely sets forth the obligation of witnesses to appear for the purposes of an investigation. All the subsequent procedure—record of the proceedings, order to answer or produce the documentary evidence—comes into play, according to the text of § 2, when the witness has appeared but (1) refuses to answer or to produce the documentary evidence (2) on the ground that it might incriminate him. We do not see how the act mentioned can be invoked here. From the preceding elaborate statement of facts, it is crystal clear that the representative of Hull Dobbs Company of Puerto Rico appeared before the prosecuting attorney in compliance with the summons and that his refusal to produce the documentary evidence required—without identifying or describing it—is not based on the claim that it may incriminate the witness, but simply on the fact that he only has in his possession the checks which he offered to produce. The best proof of the inapplicability of the act under which the prosecuting attorney seeks to derive his authority is that no record has been made of the proceedings. This is so because the sole purpose thereof is to provide for the immunity of the witnesses summoned for an investigation when during said investigation the constitutional right against self-incrimination may be injured.[5]

██ The other provision on which the prosecuting attorney relies is the third paragraph of Rule 235 of the Rules of Criminal Procedure of 1963, which authorizes prosecuting

---

[5] If, as stated by the prosecuting attorney in the motion requesting the order, the purpose of the investigation was to determine the existence of violations committed by the corporation, the procedure of Act No. 3 could not be followed either. It is known that the constitutional guaranty against self-incrimination does not apply to corporations, *Hale* v. *Henkel*, 201 U.S. 43 (1906); *Hyster Company* v. *United States*, 338 F.2d 183 (9th Cir. 1964); *United States* v. *Luros*, 243 F.Supp. 160 (1965).

attorneys to issue a subpoena for the appearance of wit-
nesses and their examination under oath for the investigation
of an offense. And it adds: "If a witness does not obey the
subpoena, the court, at the request of the prosecuting at-
torney, shall issue an order for his appearance before said
official on the date and at the time indicated, under penalty
of contempt." Assuming that this rule covers the cases re-
quiring the production of documentary evidence, the dif-
ficulty which the prosecuting attorney has to confront is
that the witness did not disobey his subpoena since it is
admitted that he appeared before said official with the
documents he had in his possession.

All the controversy boils down to the fact that the prose-
cuting attorney insists that the witness should have produced,
in addition to the canceled checks, other documents which in
his opinion must be in the possession of Hull Dobbs Company
of Puerto Rico. In view of the sharp interrogatory of the
trial judge as to the nature or identity of the documents
little light could he shed on that particular. His statement
contributed to accentuate the rigmarole. He parted from a
series of unsubstantial speculations as his vehement convic-
tion that other documents must exist to show to what vehi-
cles were the stickers specifically affixed.[6] To that end he
indicates that the checks do not show the concept for which

---

[6] In the long recital of the prosecuting attorney during the hearing,
the reference to the documents he had in mind was the following:
"Judge:

Which are the documents that the colleague has in mind, if any?
Prosecuting Attorney:

Yes, sir; first the check concerning . . . that is, which was the means
to buy this sticker. Second, the stub or any other document, record of the
Corporation of the purpose for which the check for that amount was
drawn. It seems to me that in the normal course of business an annotation
is made for such reason, the purpose for which a certain amount of money
is spent in the Corporation. Second, the dates. That the Corporation
establish: 'I spent $12 to buy sticker number X, this sticker was for that
car.' That is what I want to know."

they were drawn. He confesses, nevertheless, that because he is not familiar with the accounting system used by the company he could not say which are the documents he wants, but he has not even tried to determine it by examining the witness under oath.

■ Really the situation did not justify the issuance of an order under penalty of contempt. The prosecuting attorney, who suspects the existence of other documents in addition to those offered him, has not put the court in condition to enter it. It seems proper to add that the prosecuting attorney is not limited by Mr. Dohnert's statement to the effect that he does not have under his custody any other document related to the stickers and that in the legitimate discharge of his function of investigation he may summon him to testify under oath, as well as the other officials or employees of the company which intervenes in the procedure of these transactions, in order to try to determine as to the existence of other documents. If from their testimony it would appear that other documents exist, their production could be enforced.

■■ 2. In his decision setting aside the order, the trial judge stated that when the documentary evidence sought can be obtained by the prosecuting attorney in executive agencies "he should exhaust those means of evidence" before resorting to other persons to produce the documents. This pronouncement is erroneous. The prosecuting attorney may conduct his investigation in the manner he deems proper within the purview defined by law, provided the rights of the witnesses and of the presumptive defendants are not injured. As a general proposition he is not under the obligation of trying to obtain the evidence in public agencies where it could be found before going to other private sources. Perhaps that would be the best practice in order to maintain the investigation more confidentially, but it is not an invariable rule. In the absence of an allegation that the request

to produce documents is onerous or oppressive, in which case the court may take measures for the protection of the witness summoned, a person is bound to appear for the purposes of an investigation.[7]

By virtue of the foregoing, the writ issued will be quashed and, although for other reasons, the order entered by the Superior Court, San Juan Part, on June 2, 1966 will be affirmed.

---

[7] Even in civil proceedings, despite the fact that the petitioner has knowledge of the facts on which the witness is examined, the latter is bound to answer. *Water Resources Authority* v. *District Court*, 66 P.R.R. 796 (1947).

Among the means of protection the court may transfer the date for the production of documents and grant a reasonable term to locate them or order that the documents sought be specified more particularly.