**HYSTER COMPANY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19163.**

United States Court of Appeals Ninth Circuit.

Nov. 4, 1964.

Guy J. Rappleyea, Black & Apicella, Portland, Or., L. M. McBride, McBride, Baker, Wienke & Schlosser, Chicago, Ill., for appellant.

William H. Orrick, Jr., Asst. Atty. Gen., Irwin A. Seibel, Dept. of Justice, Washington, D. C., for appellee.

Before CHAMBERS, JERTBERG and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Hyster Company attacks the constitutionality of the Antitrust Civil Process Act (76 Stat. 548, 15 U.S.C. §§ 1311–1314, Supp. 4, (1963)), and of a "civil investigative demand" issued under the Act and served upon Hyster. It also is claimed that the demand is invalid for non-compliance with the Act. The trial court upheld the Act and the demand in all respects. We are affirming.

The action was brought under section 5(b) of the Act (15 U.S.C. § 1314(b)). The petition has attached to it a copy of the demand, and alleges that it was received by Hyster on April 16, 1963, by registered mail.[1] Hyster then proceeds to allege various grounds upon which it contends that the demand is invalid.[2] Certain of these were abandoned at the hearing. On this appeal, Hyster asserts:

1. That the Act violates the Fourth Amendment to the Constitution "because any civil investigative demand issuable thereunder is a form of compulsory process, and the permitted and authorized circumstances under which such a demand can be issued, the manner in which it can be served and employed, the scope of the documentary material which may be called for, the purposes for which it can be employed and the subsequent use to which the documentary material thus obtained can be put, alone and cumulatively, constitute an unlawful search and seizure."

2. The demand is an unlawful search and seizure, for the same reasons, and thus violates the Fourth Amendment.

3. The demand violates the Fifth Amendment[3] to the Constitution "Because the Demand * * * would require implicit testimony by the executives and employees of Hyster in the process of making a selection of documentary material in response to the Demand without the opportunity of gaining immunity against self-incrimination under the Fifth Amendment * * * and for the same reasons, the said executives and employees would be denied the protection of the immunity provisions of 15 U.S.C. Secs. 32–33."

4. The demand does not comply with the Act. The grounds are, as nearly as we can gather from the briefs:

(a) That there is no showing that Hyster is "under investigation" (§ 3. (a) and (b) (1), 15 U.S.C. § 1312(a) and (b) (1));[4]

(b) that there is no sufficient statement of the "nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable thereto" (§ 3(b) (1), 15 U.S.C. § 1312(b) (1));

(c) that there is no sufficient description of "the class or classes of documentary material to be produced thereunder with such definiteness and certainty as to permit such material to be fairly identified" (§ 3(b) (2), 15 U.S.C. § 1312(b) (2));[5]

---

1. This is authorized by section 3(e) (3) of the Act (15 U.S.C. § 1312(e) (3)).

2. No attempt was made to show, by evidence, that the requirements of the demand are unreasonable, or otherwise invalid. The attack is upon the demand as being improper on its face.

3. That portion which reads "nor shall [any person] be compelled in any criminal case to be a witness against himself * * *."

4. The demand does not state that Hyster is under investigation. It recites: "This civil investigative demand is issued pursuant to the provisions of the Antitrust Civil Process Act, 76 Stat. 548–552, Title 15 United States Code Secs. 1311–1314, in the course of an inquiry for the purpose of ascertaining whether there is or has been a violation of the provisions of Title 15 United States Code Secs. 1 and 2 by conduct of the following nature:

concerted action with manufacturers of tractor equipment, accessories and parts to control production and distribution, and restrictions upon pricing and distribution of those products."

5. The documents are described in a "Schedule" reading as follows:
"As used herein the following terms shall have the meaning indicated:
" 'The Company' means that company upon which this Demand is served, its subsidiaries, affiliates, and predecessor companies;
" 'Documents' means papers, writings, or other records, of any nature whatsoever, in possession, custody or control of The Company, which record information responsive to that requested in this Demand.
"*Documents To Be Made Available*
"For the period January 1, 1958 to date, unless otherwise indicated:
"1. Documents which name or describe equipment, accessories, and replacement

(d) that it does "require the production of any documentary evidence which would be privileged from disclosure if demanded by a subpoena \* \* \* in aid of a grand jury investigation \* \* \*." (§ 3(c) (2), 15 U.S.C. § 1312(c) (2)).

parts currently sold in connection with The Company's tractor operations.

"2. Documents which show The Company's annual sales and shipments of tractor equipment, accessories and replacement parts, in terms of units and dollar value.

"3. Documents which disclose the names and addresses of the ten largest purchasers of tractor equipment, accessories and parts from The Company, in terms of dollar sales.

"4. Contracts, agreements, and correspondence or other documents reflecting agreements or understandings, currently in effect between The Company and producers of tractors or tractor parts, or among them, including but not limited to the Caterpillar Tractor Company, Peoria, Illinois, together with memoranda or other documents construing or discussing operation of such contracts, agreements, and understandings.

"5. Documents which refer or relate to consultations, negotiations, or discussions between The Company and Caterpillar Tractor Company, or with other producers of tractors or tractor parts, relative to entering into, carrying out, setting the terms of, or terminating franchise agreements between The Company and any dealer or distributor of The Company's products, or between any tractor or tractor parts producer and its dealers.

"6. Documents which discuss The Company's advertising policies as designed to affect operations by other manufacturers or independent dealers in tractor replacement parts, and communications with advertising media, or documents pertinent thereto, which relate or refer to acceptance or refusal by trade journals and other publications of advertising copy from such manufacturers or dealers.

"7. Price lists and pricing analyses utilized, since January 1, 1956, by The Company in marketing its tractor equipment, accessories and replacement parts at any level of distribution, together with documents which discuss policies or practices in connection with establishing, changing, maintaining, or enforcing prices for said equipment, accessories or parts at any level of distribution.

Arguments similar to those urged in support of grounds 1, 4(b), 4(c) and 4 (d) were considered at length by Judge Nordbye in a proceeding involving a comparable demand, Petition of Gold Bond Stamp Company, D.C.Minn., 1963, 221 F.Supp. 391. He rejected them.

"8. Documents which disclose the names and addresses of current distributors and dealers for The Company's tractor equipment, accessories, and replacement parts, and documents which identify dealerships terminated since January 1, 1956.

"9. Franchise agreements, currently in effect, with distributors or dealers handling The Company's tractor equipment, accessories or replacement parts; to the extent that such agreements are uniform, representative copies of each type, together with indication of the specific dealers which are parties thereto, will suffice.

"10. Documents which relate or refer to formulating the terms of, carrying out, or terminating any franchise agreement or contract between The Company and distributors or dealers in tractor equipment, accessories or parts.

"11. Documentary communications, directives and memoranda exchanged between and among executive and supervisory personnel of The Company, with particular reference to policy memoranda and departmental reports, relative to tractor equipment, accessories or parts, as follows:

"a. Financial arrangements with dealers, including extensions of credit, collections of commissions from dealers for payment to other dealers, prices charged by dealers and inducements designed to promote exclusive dealerships.

"b. Territorial limitations within which individual dealers may operate without surrendering commissions or other rights, in whole or in part.

"c. Conditions upon which The Company's franchised dealers may handle tractor equipment, accessories or parts produced or sold by companies other than The Company.

"d. Methods of enforcement or surveilance [sic] of dealers utilized by The Company to assure dealer operations in accordance with their contractual or understood obligations to The Company.

"12. Documents which identify personnel or committees within The Company responsible for initiating, setting, maintaining or publishing price changes, since January 1, 1956 in connection with sales of tractor equipment, accessories or parts at any level of distribution."

His decision was unanimously affirmed by the Court of Appeals for the Eighth Circuit, "on the basis of his opinion," which was said to contain an "excellent and comprehensive analysis of the Act." Gold Bond Stamp Company v. United States, 8 Cir., 1964, 325 F.2d 1018. We agree with that decision. We can see no benefit to be gained by anyone from an opinion by us restating the same conclusions.

■ In this case, Hyster makes much of the fact that the Attorney General, whose duties include prosecution, is the party on whom the power to demand is conferred. The theory is that while it may be proper to confer such authority upon the Federal Trade Commission (e. g., United States v. Morton Salt Co., 1950, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401), or the Administrator of the Wage and Hour Division of the Department of Labor (e. g., Oklahoma Press Pub. Co. v. Walling, 1946, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614), or on other "quasi-judicial" or "administrative" bodies or officers, it is not proper to confer it upon the Attorney General.

We are not convinced. The F.T.C. and the Administrator have investigative and enforcement powers and duties, primarily civil in nature. So do many other commissions and administrators. (See 1 Davis, Administrative Law, § 3.03 (1958)) So does the Attorney General under the antitrust laws. (15 U.S.C. §§ 4, 9, 25) He also has the duty to institute prosecutions. We have no doubt that it is within the power of administrators or administrative boards or commissions, if in the course of authorized investigations they uncover evidence of the commission of crimes, to refer that evidence to the Attorney General. In some cases, Congress has expressly conferred such authority. (E. g., The Emergency Price Control Act of 1942, 56 Stat. 23, § 205(b), 56 Stat. 33) In our case the Act, section 4(d) (15 U.S.C. § 1313(d)) authorizes delivery of documents to an attorney authorized to appear before a grand jury in a proceeding involving antitrust violations. The fact that the Attorney General can himself institute a prosecution, instead of referring the information to someone else, may be a distinction, but we do not think that it makes a constitutional difference. He is still a public officer, exercising functions conferred upon him by law. There is no presumption that he will abuse his powers, quite the contrary, and there certainly is no showing that he is doing so in this case.

■ Ground 2 is based upon the same reasons as ground 1, and we likewise reject it. We would add that the demand is enforcible only in a judicial proceeding brought either by the Attorney General or the person served (section 5(a), (b), (d), 15 U.S.C. § 1314(a), (b), (d)).[6] Moreover, section 5(e) (15 U.S.C. § 1314(e)) makes the Federal Rules of Civil Procedure applicable to any petition under the Act. Thus there is available to Hyster, in a petition to modify or set aside the demand, the safeguards afforded by rules 34 and 30(b). The court has a broad discretion to protect Hyster from an unreasonable demand. And it is only "unreasonable" searches and seizures to which the Fourth Amendment refers. We do not find the demand unreasonable on its face, and Hyster has made no attempt to show that it is unreasonable in its actual application to Hyster. (Cf. Hunt Foods and Industries, Inc. v. F.T.

6. The demand refers to, and quotes, 18 U.S.C. § 1505, the pertinent portions of which read:

"Whoever, with intent to avoid, evade, prevent, or obstruct compliance in whole or in part with any civil investigative demand duly and properly made under the Antitrust Civil Process Act willfully removes from any place, conceals, destroys, mutilates, alters, or by other means falsifies any documentary material which is the subject of such demand * * *. [S]hall be fined not more than $5,000 or imprisoned not more than five years, or both. * * * *"

This does not make ordinary failure to comply an offense.

'C., 9 Cir., 1961, 286 F.2d 803, 810–812, where such a showing was made and an F.T.C. subpoena was modified by consent, accepted by the court, and enforced as so modified.)

As to ground 3, we note that Hyster is the only party before the court. As a corporation, it has no privilege against self-incrimination. Hale v. Henkle, 1906, 201 U.S. 43, 74–75, 26 S.Ct. 370, 50 L.Ed. 652; Baltimore & Ohio R. R. v. I.C.C., 1911, 221 U.S. 612, 622, 31 S.Ct. 621, 55 L.Ed. 878; Wilson v. United States, 1911, 221 U.S. 361, 382–384, 31 S.Ct. 538, 55 L.Ed. 771. It cannot assert the privilege on behalf of someone else. Hale v. Henkle, supra, 201 U.S. at 69–70, 26 S.Ct. 370; Rogers v. United States, 1951, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344. Moreover, for all that appears, there may be responsible officers or employees of Hyster who could do the necessary work of selecting the required documents without incriminating themselves even in the rather nebulous manner that Hyster conjures up, because they personally had nothing to do with the transactions to which the documents relate. We note, too, that the demand does not, and cannot under the Act, contain an *ad testificandum* clause. On its face, it does not compel anyone to be a witness, much less a witness against himself.

There remains ground 4(a). Under the Act, the demand can be served only on a "corporation, association, partnership, or other legal entity not a natural person" (section 2(f), 15 U.S.C. § 1311(f)) which is "under investigation" (section 3(a), 15 U.S.C. § 1312(a)). The Act does not require that the demand state that the addressee is "under investigation." The demand does state that it "is issued pursuant to the provisions of" the Act. (Footnote 4, supra) We think this a sufficient allegation. Hyster does not allege that it is not under investigation. There is a presumption that a public officer is acting lawfully. We have applied it in closely analogous situations. Bowles v. Northwest Poultry & Dairy Products Co., 9 Cir., 1946, 153 F.2d 32, 34; Hagen v. Porter, 9 Cir., 1946, 156 F.2d 362, 364–365. We see no reason for not applying it here.

Affirmed.