UNITED STATES of America,
Plaintiff,

v.

CRENSHAW COUNTY UNIT OF the UNITED KLANS OF AMERICA, Knights of the Ku Klux Klan, Inc., C. D. "Durwood" McLeod, Individually and as Exalted Cyclops; John William Moody, Individually and as Kligrapp and Klabee; F. Brown Franklin; H. E. Browder; Barney Furr; M. O. Bodiford; John M. Wilson; and Grady Mount, Defendants.

Civ. A. No. 2723-N.

United States District Court
M. D. Alabama, N. D.

Aug. 13, 1968.

Stephen J. Pollak, Atty. Gen., Frank M. Dunbaugh and Frank D. Allen, Jr., Attys., Civil Rights Division, Dept. of Justice, Washington, D. C., and Ben Hardeman, U. S. Atty., Montgomery, Ala., for plaintiff.

Ira DeMent, Montgomery, Ala., for all defendants except H. E. Browder.

H. E. Browder, pro se.

### ORDER

JOHNSON, Chief Judge.

■ This is another action by the Nation against a Klan.[1] In this case, the United States seeks an injunction to prevent further interference with the exercise of rights by Negro citizens of Crenshaw County to choose to attend and attend the predominantly white schools, adjudicated by orders of this Court. Defendants are certain named individuals and a corporation, the Crenshaw County Unit of the United Klans of America, Knights of the Ku Klux Klan.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1651. A motion to dismiss this action for lack of jurisdiction and for failure to state a cause of action upon which relief could be granted was denied by formal order on August 1, 1968. This cause is now submitted upon the testimony of numerous witnesses, accompanying exhibits, and supporting briefs.

Prior to the 1965–1966 school year, the Crenshaw County, Alabama, Board of Education had operated a dual system of schools with complete segregation of the races. A desegregation plan based upon "freedom of choice" was instituted that year. At the commencement of the 1966–1967 school year, several Negro citizens complained of the administration of the plan and this Court entered a preliminary injunction requiring the Board of Education to allow specified Negroes to enter previously all-white schools. The United States intervened in that action. On June 1, 1967, this Court entered a decree requiring the Board of Education to put into effect a desegregation plan conforming substantially to the plan required by United States v. Jefferson County Board of Education, 372 F.2d 836 (5th Cir. 1966), aff'd en banc, 380 F.2d 385 (1967), cert. denied, 389 U.S. 840, 88 S.Ct. 72, 77, 19 L.Ed.2d 103, 104 (1967).

The Crenshaw County Unit of the Klan had its first recorded meeting October 6, 1965—its birth a remarkable coincidence with the birth of desegregation in Crenshaw County. On Oct. 22, 1966, the Crenshaw Klavern was issued a Charter signed by Robert Shelton, Imperial Wizard of the Invisible Empire.[2] The

---

1. This Court has previously granted the United States an injunction against the activities of branches of the Klan. See United States v. United States Klans, Knights of Ku Klux Klan, Inc., 194 F. Supp. 897 (1961). See also Judge Wisdom's thorough discussion in United States by Katzenbach v. Original Knights of the Ku Klux Klan, 250 F.Supp. 330 (1965). Counsel for the defense insists that the sins of the fathers may not be visited upon the sons. Although hardly necessary in this case, this Court would not hesitate to judicially notice the historical reputation of the Klan as a whole concerning its purposes and methods. Such reputation may be considered for whatever evidentiary value it may have when, as here, the local unit is shown to be connected to the wider organization. Here, a charter issued by the Imperial Wizard was introduced into evidence. The minutes of the Crenshaw County Klavern's meetings revealed that they contributed to the defense fund of the Imperial Wizard, Robert Shelton. The minutes also reveal several purchases of the centrally published Klan newspaper, Firey Cross, for distribution in Crenshaw County.

2. By that Charter, the "Knights" of Crenshaw County are charged as follows:

"THE SAID KLAN is hereby authorized and empowered to do and perform all such acts and things as are prescribed by the Kloran, Laws, Im-

evidence places defendants McLeod, Moody, Franklin, Bodiford and Mount in the Crenshaw County Klan Unit.[3]

█ Against this background, it is possible and, in an honest exercise of the judicial function, necessary to assess realistically the evidence introduced by the United States. Testimony revealed direct threats by one of the defendants, who identified himself as a Klansman, against a Negro parent of a child who chose a predominantly white school. This parent and others similarly situated found that crosses were burned in the vicinity of their homes and the letters "KKK" emblazoned in the road at the spot their children boarded the desegregated school buses. The cross burnings were sometimes accompanied by the repeated discharge of firearms. Several white employers testified that pressure was put upon them by some of the defendants to discharge Negro employees whose children had chosen to attend previously white schools. Two white store owners testified that they were "asked" by an employee of the defendant Bodiford to sign a petition indicating that they would not sell to, extend credit to, or aid in any way several listed Negroes who had enrolled children in the white

---

perial Decrees, Edicts, Mandates, and Usages of the Order, and to enjoy all the rights, privileges, and prerogatives authorized by the Constitution thereof; and all klansmen are strictly enjoined to valiantly preserve and persistently practice the principles of pure patriotism, Honor, Klanishness, and White Supremacy, ever keeping in mind and heart the sacred sentiment, peculiar purpose, manly mission and lofty ideals and objects of this order, a devoted loyalty to their Emperor and their Imperial Wizard, a steadfast obedience to the Constitution of this Order, a faithful keeping of their Oath of Allegiance, and a constant, unwavering fidelity to every interest of the Invisible Empire, to the end that progress, power, purpose and influence of KLAN-KRAFT be properly promoted, the knowledge of the faithful, self-sacrificing service and noble achievements of our fathers be not lost to posterity, and all those things for which this our beloved Order is founded to do and to perform, and to protect, and to preserve and to perpetuate, be diligently done and scrupulously maintained, and that they be blameless in preserving the grace, dignity, and interest of this CHARTER forever.

"I SOLEMNLY CHARGE YOU to hold fast to the dauntless faith of our fathers and to keep their spotless memory secure and unstained, and true to the traditions of our valiant sires, meet every behest of duty, in all the relationships of life and living, promptly, and properly, without fault, without fail, without fear and without reproach."

3. No evidence was presented connecting defendants Furr, Browder, and Wilson to the Klan. The five that were connected were placed in the Klan by testimonial evidence and by membership lists subpoenaed by the United States. The defendants' motion to quash the subpoenas for this and other documents on the grounds that they violated the group's First and Fifth Amendment rights was denied in open court. Defendants rely upon N.A.A.C.P. v. State of Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Such reliance is misplaced. In that case the Court distinguished People of State of N. Y. ex rel. Bryant v. Zimmerman, 278 U.S. 63, 49 S.Ct. 61, 73 L.Ed. 184, in which it had held that New York could insist on the membership lists of the Klan. "The decision was based on the particular character of the Klan's activities, involving acts of unlawful intimidation and violence." 357 U.S. at 465, 78 S.Ct. at 1173. That distinction can be accurately applied here. It was applied by Judge Wisdom in United States v. Original Knights of the Ku Klux Klan, supra. The Fifth Amendment ground was rejected because the Fifth Amendment protects only persons, not corporations. Hyster Co. v. United States, 338 F.2d 183 (9th Cir. 1964). United States v. Luros, 243 F.Supp. 160 (D.C.Iowa 1965).

Defendants McLeod and Moody were called as witnesses by the United States. Each of them invoked the Fifth Amendment privilege and refused to answer several questions, including whether they or others were members of the Klan. This Court upheld those claims of privilege. Defendant Moody as Kligrapp or secretary of the organization brought the subpoenaed documents. He did not invoke his personal privilege not to answer when asked to produce the subpoenaed documents, although he did refuse to acknowledge that they were regularly in his possession.

schools. Owners who expressed reluctance to sign were told they would be boycotted. This evidence amply justifies a finding of a pattern and practice of interfering with the freedom of choice of Negro parents protected by this Court's previous orders. Moreover, the evidence connecting the Crenshaw Klavern and several of its officers and members to these practices is more than sufficient.

The effect of these practices on the freedom-of-choice plan in Crenshaw County becomes all too clear when the choices of the Negro students are analyzed over time.[4] For the 1965–1966 school year 21 Negroes chose previously white schools and 21 actually attended. For the 1966–1967 school year 202 Negroes chose white schools and 109 actually attended. For the 1967–1968 school year 112 Negroes chose white schools and 78 actually attended. Eighty-one Negroes chose to attend white schools during the June, 1968 choice period. In short, the situation in Crenshaw County has declined in only two years from one where freedom of choice showed considerable promise as a method of desegregating schools to one where the Board of Education was permitted to continue it for one more year only after several modifications.[5]

In view of the purpose, character and effect of the practices of the defendants in this case, there can be no doubt of the appropriateness and necessity of injunctive relief. And, since this Court has recently given freedom of choice another chance in Crenshaw County, an injunction is urgently needed to dispel the fears of Negro parents which are likely to be the continuing effect of defendants' practices. What Judge Wisdom concluded in United States v. Original Knights of Ku Klux Klan, supra, 250 F. Supp. at 356, is also appropriate here:

"Protection against the acts of terror and intimidation committed by the Original Knights of the Ku Klux Klan and the individual defendants can be halted only by a broad injunctive decree along the lines of the order suggested by the United States."

To be fully effective, the injunction should be and will be served upon defendants and upon all persons shown by the evidence to be or to have been recently members of the Crenshaw County Unit of the Ku Klux Klan.

In accordance with the foregoing and for good cause, it is the order, judgment and decree of this Court that the defendants Crenshaw County Unit of the United Klans of America, Knights of the Ku Klux Klan, Inc., C. D. McLeod, John William Moody, F. Brown Franklin, M. O. Bodiford, Barney Furr, H. E. Browder, John M. Wilson and Grady Mount, their agents, employees, officers, their successors, members of the Crenshaw County Unit of the United Klans of America, specifically those listed below, and all others acting in concert or participation with them who receive notice of this order be and they are hereby enjoined from interfering with the desegregation of the public schools in Crenshaw County, Alabama, in any manner and from harassing, threatening, intimidating, coercing, punishing, boycotting, discharging from employment, or attempting to harass, threaten, intimidate, coerce, punish, or discharge from employment:

(1) Any Negro, because of his or her choice of any public school in Crenshaw County, or because of his or her participation in the activities, or use of the facilities of said public school.

(2) Any Negro, because of his or her child's choice, or because of his or her choice made in behalf of his or her child, of any public school in

4. This Court does not necessarily attribute the entire decline in Negroes' choosing previously white schools to the activities of defendants. However, the fact that in this Court's considerable experience with freedom of choice there has seldom been a decline over time at least merits the inference that Klan activities were partly responsible. No evidence was introduced to rebut that inference.

5. See the order of this Court in Harris v. Crenshaw County Board of Education filed August 8, 1968.

Crenshaw County or because of such a child's participation in the activities or use of the facilities of said public school.

(3) Any person, because the person employs, extends credit to, or does business with a Negro who has chosen to attend any public school in Crenshaw County, or who has chosen such school for his child.

(4) Any other person for the purpose of discouraging any Negro from exercising his right to equal opportunity to choose to attend any public school in Crenshaw County or to participate in the activities or use the facilities of said public schools.

(5) Any official or employee of the Crenshaw County Board of Education on account of his having accorded or sought to accord any Negro equal treatment in attendance of the public schools of Crenshaw County, or participation in the activities or use of the facilities of said public schools.

It is further ordered that those Klan members named as defendants and those members specifically set forth below, and all others in active concert or participation with them, be and the same are hereby enjoined from burning crosses, discharging firearms or placing Klan symbols in the vicinity of Negro homes, or in the vicinity of places where Negro students board school buses, or in any other place where the effect of such activities is likely to be the intimidation of Negroes for the purpose of interfering with school desegregation.

It is further ordered that the United States Marshal or Deputy Marshal for this District serve a true copy of this decree upon each of the defendants enjoined by this decree, and upon each of the following members of the Crenshaw County Unit of the United Klans of America, Knights of the Ku Klux Klan:

Bailey, John W.
Byrd, Walker
Bagwell, Julian J.
Bolling, Jesse W.
Catrett, James P.
Catrett, T. C.
Chandler, James
Duncan, W. F.
Defee, Emmett
Fowler, Edward
Faulk, Ralph
Gainey, George D.
Hughes, Cecil Byron
Hilburn, Henry H.
Hilburn, W. D.
Hughes, James
Jones, Rex
Lewis, Richard Leroy
Morris, S. J.
Moore, Phillip

Merry, John W.
May, J. W.
McDougald, Martel
Mothershed, Charles H.
Mason, James W.
Odum, Guy
Powell, Alton E.
Rogers, Daniel L.
Rhodes, Herbert Lee
Searcy, O. H.
Stringer, Daniel
Sims, Thomas R.
Tomlin, A. H.
Tranum, J. M., Sr.
Taylor, Ezra A.
Vickery, Hayward
Warren, Stanley
West, Joe
Witherington, Robert G.
Williams, Davis Wayne

———◆———

This Court retains jurisdiction of this cause.

It is further ordered that the costs incurred in this proceeding be and the same are hereby taxed against defendants C. D. McLeod, John William Moody, F. Brown Franklin, H. E. Browder, Barney Furr, M. O. Bodiford, John M. Wilson, and Grady Mount, for which execution may issue.