**Betty J. FINNELL, Master Wreckers, Inc., a Kansas corporation, and National Automotive Long Lines Association, Petitioners,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE and David L. Foster, Respondents.**

**No. 80–4319.**

United States District Court, D. Kansas.

Jan. 8, 1982.

Dale M. Sprague, Topeka, Kan., James A. Beckwith, Denver, Colo., for petitioners.

David J. Foster, U. S. Dept of Justice, Washington, D. C., Jim J. Marquez, U. S. Atty., Topeka, Kan., for respondents.

MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action to set aside or modify three civil investigative demands ("CIDs")

---

issued by respondent as part of an investigation of possible Sherman Act violations in the sale of used automotive parts. Two motions are currently pending before the court: 1) a motion to dismiss the petition;* and 2) a motion for a protective order barring the deposition of the person responsible for the preparation of the CIDs, respondent Mr. David Foster.

Petitioners in this case are the three recipients of the CIDs—Betty Finnell, Master Wreckers, Inc., and National Automotive Long Lines Association. Finnell is the sole stockholder and president of Master Wreckers, Inc. This firm operates a telephone circuit to facilitate the location, sale, and exchange of used automotive parts. The National Automotive Long Lines Association ("NALL") is an association of owners of telephone lines similar to that operated by Master Wreckers, Inc. Finnell is the executive secretary of NALL.

CID Nos. 4253 and 4252 are addressed to petitioners Master Wreckers, Inc. and NALL. Generally, they request documents concerning the organization, personnel or membership, financial worth, bylaws, methods of business, and disciplinary action of Master Wreckers, Inc. and NALL. CID No. 4249 requests petitioner Finnell to give oral testimony for the investigation.

Petitioners have made an assortment of arguments against the enforcement of the CIDs. By and large, the arguments listed in the petition to set aside or modify the CIDs differ in tone and substance from the arguments made in petitioners' reply to respondent's motion and in petitioners' opposition to respondent's request for a protective order. The petition, in essence, states four objections to CID Nos. 4253 and 4252: 1) that some of the documents requested are on public file; 2) that some requests are overbroad and onerous; 3) that some requests are overbroad and immaterial; and

4) that some information is protected by the attorney-client privilege. Petitioners' reply to respondent's motion to dismiss does not elaborate upon all of these arguments. It appears to concentrate upon the adequacy of respondent's description of the conduct under investigation, the motive for the investigation's initiation, and the relevance of the requested documents to the investigation. It is also clear from a review of petitioner's reply as well as the other pleadings in this case, that the parties disagree about each side's willingness to cooperate in this matter.

Civil investigative demands may be issued when the Attorney General or the Assistant Attorney General in charge of the DOJ's Antitrust Division has reason to believe that any person may have information relevant to a civil antitrust investigation. 15 U.S.C. § 1312(a). Each demand must state the nature of the conduct being investigated, fairly identify with definiteness and certainty the documents to be produced if such are requested, prescribe a reasonable date and time for oral examination or document production, and identify the person who shall conduct the oral examination or accept the documents. 15 U.S.C. § 1312(b). Information which would be protected from disclosure under the standards applicable to subpoenas issued pursuant to a grand jury investigation or under standards governing discovery under the Federal Rules of Civil Procedure shall not be disclosed. 15 U.S.C. § 1312(c). Various safeguards for persons giving oral testimony or producing documents are described in 15 U.S.C. § 1312(i) and 15 U.S.C. § 1313.

A presumption of regularity has been recognized to apply to the issuance of CIDs. *American Pharmaceutical Assoc. v. United States Dept. of Justice*, 344 F.Supp. 9, 12 (E.D.Mich.1971) *aff'd* 467 F.2d 1290 (6th Cir. 1972) (citing *Hyster Co. v. United*

---

* We have chosen to construe respondent's memorandum in opposition to the petition to set aside or modify the CIDs as a motion to dismiss. Petitioners have been made aware of this decision and have been given a full opportunity to respond. Petitioners have objected to this procedure though, on the grounds that

they must conduct discovery in order to fully refute the motion to dismiss. Petitioners' right to conduct discovery involves some of the same issues presented in the motion to dismiss. Therefore, we have chosen to discuss and dispose of these issues with one order.

*States*, 338 F.2d 183, 187 (9th Cir. 1964); *Lightning Rod Mfrs. Ass'n v. Staal*, 339 F.2d 346, 347 (7th Cir. 1964)). We shall now examine petitioner's arguments against the CID's to determine whether this presumption has been overcome.

*Request for documents on public file* —The fact that some of the documents requested are on public file might provide circumstantial support for a charge of harassment or a claim that an unduly onerous burden has been placed upon the petitioner. In this case, however, petitioner has not argued that it would be unduly burdensome for it to produce the documents on public file. Standing alone, the fact that the documents are open to the public does not require the modification of the CIDs.

*Requests are overbroad and onerous*—Petitioners have done little to flesh out this objection. Indeed, the objection has been contradicted to some extent by petitioners' claims that they do not have the documents requested. The affidavit of Betty Finnell states that the effort required to search AT&T archives for past users of the Master Wreckers network since 1959 would be astronomical. We do not believe this effort is required by the CID. As the CID explains, with the exception of paragraph 6, the documents requested are to include only those which were prepared, sent or received since January 1, 1976. Moreover, the term "document(s)" means material "in the company's possession, custody or control." Thus, we do not believe that a search of AT&T archives is required to comply with the CIDs. In sum, we have not been given sufficient reason to believe that the CID document requests are overbroad and onerous.

*Requests are overbroad and immaterial* —Once again, petitioners have largely failed to explain why they believe the document requests are immaterial to the DOJ investigation. Instead, petitioners' arguments are focused mainly upon the motive and purpose of the investigation. The Government has a relatively light burden in proving the relevance of the CIDs to the ongoing investigation. Cf., *In re Rabbinical Seminary, etc.*, 450 F.Supp. 1078, 1084 (S.D. N.Y.1978) (burden of demonstrating relevance of grand jury material requests satisfied by a showing that the material may have some possible connection to the subject matter). The relevance of documents pertaining to membership policies and procedures have been accepted in other cases challenging CIDs. *Material Handling Institute, Inc. v. McLaren*, 426 F.2d 90 (3rd Cir. 1970). We believe that the relevance and materiality of the documents requested through the CIDs has also been sufficiently demonstrated in this case.

*Attorney-client privilege*—Petitioners have not specifically identified the documents which contain material protected by the attorney-client privilege. Any document covered by the CIDs which petitioners believe to be protected from disclosure by the attorney-client privilege may be submitted to the court for in camera inspection and ruling within twenty days of the date of this order. This procedure was followed in *Petition of Gold Bond Stamp Co.*, 221 F.Supp. 391, 399 (D.Minn.1963) *aff'd*, 325 F.2d 1018 (8th Cir. 1964) (*per curiam*).

*Description of the conduct under investigation*—The CIDs describe the conduct undergoing investigation as "restraints of trade in the sale of used automotive parts." Although petitioners contend that this is an inadequate description of the investigation, we believe it is sufficient when supplemented by the conversations which have occurred between David Foster of the Department of Justice and petitioner Betty Finnell.[1] The affidavits of these persons make it clear that they have discussed the scope and nature of the investigation over the phone. See also the letter from David Foster to Betty Finnell dated July 10, 1980. We are satisfied that petitioners have received sufficient description of the nature of the conduct under investigation.

---

1. It has been held that a CID with an insufficient description of the conduct constituting the antitrust violation should not be set aside if the recipient of the CID had actual knowledge of the conduct being investigated. See. e.g., *Material Handling Institute, Inc. v. McLaren, supra*, 426 F.2d at 92; *Petition of Gold Bond Stamp Co., supra*, 221 F.Supp. at 398.

*Motive behind the CIDs*—Petitioners argue that these CIDs were issued as part of an effort to punish and harass petitioners for their opposition to the passage of the Motor Vehicle Theft Prevention Act and to disclose the information received to petitioners' economic competitors. This motivation has been denied by John W. Clark in an affidavit filed in a reply to petitioner's response to the motion to dismiss. Mr. Clark is the Chief of the Special Trial Section of the DOJ Antitrust Division. Petitioners' charges are also generally refuted by David Foster's affidavit. Mr. Foster has stated that the CIDs were authorized in connection with an investigation of the use of communication networks in used automotive parts sales. We would note that the genesis of the investigation does not appear important to the validity of the CIDs as long as the investigation and the CIDs are pursued in good faith.[2] The affidavits filed by government officials in this case indicate that the Department of Justice is proceeding in good faith. Similar affidavits in other cases have been considered sufficient to resolve charges of bad faith and political motivation. *American Pharmaceutical Ass'n v. United States Department of Justice, supra; In re Petition of Emprise Corp.*, 344 F.Supp. 319 (W.D.N.Y.1972). We believe the affidavits achieve the same result here. Indeed, Chief Judge Urbom of the District of Nebraska relied upon Mr. Foster's affidavit to conclude that discovery in the form of a deposition of Mr. Foster was not necessary to determine the validity of a CID served in the District of Nebraska in connection with the same investigation involved here. *John Ruggiero v. United States Dept. of Justice*, No. 80–0–736 (D.Nebr., unpublished, 9/8/81).

We also note that disclosure of information produced through CIDs is limited under the provisions of 15 U.S.C. § 1313. If additional protection is required, this court can issue a protective order. Before doing so, the court will require petitioners to designate with as much specificity as possible the documents requiring protection. If we decide that a protective order should be issued, we shall follow the procedure described in *Aluminum Company of America v. United States Department of Justice*, 444 F.Supp. 1342, 1347 (D.D.C.1978). There, the court required the Justice Department to inform the petitioner of its intention to disclose certain information. If the petitioner objected to the disclosure, then the parties could appeal to the court for a final ruling.

In sum, petitioners' charges of political motivation are refuted by the Government affiants and do not warrant setting aside the CIDs. Petitioners' fears that they will be harmed by the disclosure of information also do not justify setting aside the CIDs. If necessary, the court will issue a protective order against such harmful disclosure.

*Relevance of the information requested*—This argument is tied to petitioners' charges that the Department of Justice, in fact, is not pursuing an investigation of possible antitrust violations in this area. Instead, according to petitioners, the Department is conducting a general inquiry at the insistence of political and economic opponents of the petitioners. Petitioners claim that in reality the only antitrust investigation of price fixing in the sale of used automotive parts is centered in the Washington D. C. area. Petitioners assert that they do not have information relevant to that investigation. These charges, which are unsupported by evidence, do not overcome the presumption of validity enjoyed by CIDs in combination with the affidavits filed by the Department of Justice. If the Department is conducting an investigation of possible violations involving the use of telephone networks in this area (and the Department's affidavits indicate that such is the case) then the CIDs may be issued because the information requested by the CIDs is relevant to such an investigation. Judge Urbom reached the same conclusion in *Ruggiero, supra:*

---

**2.** Congress did not require that CID recipients be informed of the reasons for beginning the investigation, the scope of the investigation or the strategy of the investigation.

The petitioners erroneously assume that the only antitrust investigation currently being conducted is directed at east coast operators. This assumption is apparently based on the petitioners' belief that an inquiry is not an antitrust investigation unless it has "identifiable targets" against whom complaints have been filed. . . . The statutory definition of antitrust investigation, however, contains no such limitation. Foster's affidavit makes clear that the Justice Department is conducting an antitrust investigation far broader in scope than the east coast inquiry referred to by the petitioners. Since the antitrust investigation here is not limited to east coast operators, the Court finds that it is unnecessary for the petitioners to conduct discovery to determine the basis of the Department's reason to believe that the petitioners have information relevant to an antitrust investigation of east coast operators.

Slip op. at 4.

In sum, petitioners' relevancy objection does not challenge the materiality of the requested information to an antitrust investigation, but instead challenges the existence of an antitrust investigation in this area. We believe respondent has demonstrated that such an investigation exists. Therefore, we reject petitioners' relevancy objection.

*Petitioners' right to discovery*—Petitioners argue that if they are given the opportunity to conduct discovery, they will produce evidence to prove: 1) that the Department of Justice does not have an investigation of antitrust violations for which petitioners have relevant information; 2) that the CIDs under challenge were initiated by an individual with economic and political interests opposed to petitioners; 3) that the Department of Justice is engaged in "an unlimited, exploratory investigation"; and 4) that the Department is conducting an active civil and criminal antitrust investigation in the Washington D. C. area unrelated to the information sought through the CIDs received by petitioners. So far, the only discovery attempted by petitioners is the deposition of respondent David Foster. This deposition has been stayed while respondent has sought a protective order.

We recognize that limited discovery, usually in the form of interrogatories, has been allowed in some cases of this type. For instance, in *Associated Container Transportation, etc. v. United States,* 502 F.Supp. 505 (S.D.N.Y.1980), the court permitted interrogatories to be served for the purpose of determining whether the activities under Department of Justice investigation were exempted from antitrust laws. In this case, however, we do not view the discovery proposed by petitioners to be necessary or appropriate.

Most of the arguments lodged against the CIDs in this case would not be strengthened by the discovery of information held by the Department of Justice. For example, petitioners are capable of describing to the court what requested documents are on public file and why it would be onerous or unduly burdensome to comply with the CIDs. The materiality of the requested information is another issue for which discovery is not necessary. Respondents need not prove beyond a doubt that the requested information is material to the investigation they are conducting. Indeed, a showing of some possible relationship to the investigation should be sufficient. Cf., *In re Rabbinical Seminary, etc., supra,* 450 F.Supp. at 1084 (material requested by a grand jury subpoena is "relevant" if it "may have some possible connection to the subject matter of the investigation"); *In re Grand Jury Subpoenas Duces Tecum, etc.,* 391 F.Supp. 991, 998 (D.R.I.1975) (same standard applied in considering motion to quash a grand jury subpoena). We believe this minimal burden has been met by respondents. Allowing discovery would needlessly delay this matter because evidence controverting the relevance of the requested information would not serve to remove the possibility of relevance already established.

We do not believe, nor do petitioners claim, that discovery would advance their assertions of an attorney-client privilege.

Nor should discovery be necessary to determine whether petitioners have been informed of the nature of the violations under investigation. Petitioners have already admitted a sufficient knowledge of the nature of respondents' investigation.

Thus, the only argument for which discovery might be of some possible benefit to petitioners, is the contention that the investigation has been inspired by political motives for the benefit of petitioners' political and economic competitors. This charge represents the essence of the four points petitioners claim discovery would permit them to prove.

We recognize the dangers of trial by affidavit. Nevertheless, Congress's intention to permit the Department of Justice to investigate antitrust violations with the use of CIDs without prematurely becoming involved in full-blown litigation, would be thwarted if extended discovery concerning the motives for issuing CIDs was permitted. As noted earlier, other courts have held that affidavits denying improper motives have removed the need for even limited discovery. *American Pharmaceutical Ass'n v. United States Department of Justice, supra; In re Petition of Emprise Corp., supra.* In the instant case we shall hold that the affidavits filed by David Foster and John W. Clark render the deposition of David Foster unnecessary and inappropriate because they completely deny the political motives asserted by petitioners.

In sum, we do not believe that discovery is warranted in this matter. Most of the arguments petitioners make would not benefit from discovery. Discovery for the other arguments has been rendered unnecessary by affidavits which answer the main questions petitioners would raise in the proposed deposition of David Foster. Therefore, respondents' motion for a protective order against the taking of the deposition is granted.

*Petitioners' request for costs*—Petitioners have not substantiated their claim that the costs of complying with the CIDs is so great that the Government should share in the burden. Petitioners' request shall be de-nied without prejudice to its renewal should compliance prove as costly as petitioners predict. We trust however, that the Government's stated willingness to cooperate with petitioners shall forestall the need to resubmit a request for costs.

CONCLUSION

In conclusion, we reject the arguments petitioners have made in their petition to set aside or modify the CIDs and in their other pleadings in this case. The CIDs shall be enforced in accordance with the text of this opinion. Petitioners shall be granted twenty (20) days from the date of the receipt of this order to comply with the CIDs. The Clerk is directed to keep this file open pending a request for a protective order, assessment of costs, or in camera inspection of documents. Respondents' motion for a protective order is granted.

IT IS SO ORDERED.