In re Petition of MACCAFERRI GABIONS, INC., Petitioner,

v.

UNITED STATES of America, Respondent.

Civil Action No. MJG–95–1270.

United States District Court, D. Maryland.

Aug. 25, 1995.

Larry Klayman, Paul J. Orfandes, Klayman and Associates, Washington, D.C., for petitioner.

Jeffrey Steger, U.S. Department of Justice, Antitrust Division, Civil Task Force II, Washington, D.C., for respondent.

GARBIS, District Judge.

The Court has before it the Petition of Maccaferri Gabions, Inc., a Corporation of Maryland, For an Order Modifying or Setting Aside Civil Investigative Demand No. 12316 of the U.S. Department of Justice Antitrust Division, Pursuant to 15 U.S.C. § 1311, et seq. And the materials submitted by the parties relating thereto. The Court has held two hearings and had the benefit of the arguments of counsel.

## I. *BACKGROUND*

Petitioner Maccaferri Gabions, Inc. ("Maccaferri") is a Maryland Corporation engaged in the manufacture of wire mesh erosion control products called "gabions." For present purposes, it suffices to say that gabions are (or include) wire mesh products which are filled with materials (such as stones) and used in the construction of retaining barriers and other items.

On March 10, 1995, the Antitrust Division of the Department of Justice ("the Antitrust Division") served Civil Investigative Demand No. 12316 ("the CID") on Maccaferri, seeking production of described documents in an investigation relating to the gabion and gabion fastening industries. Following dealings with the Antitrust Division (described herein), Maccaferri filed this action pursuant to 15 U.S.C. § 1314 seeking to modify or set aside the CID on the following grounds:

1. The failure to comply with 15 U.S.C. 1312(b) by not stat[ing] the nature of the conduct constituting the alleged antitrust violation ..."

2. The overbreadth of the CID.

3. The Antitrust Division already has concluded that Maccaferri has violated the antitrust laws.

Maccaferri also seeks to undertake discovery to obtain evidence regarding an alleged improper purpose (i.e. political motivation) for the issuance of the CID.

## II. *DISCUSSION*

### A. *In General*

The Antitrust Civil Process Act, 15 U.S.C. § 1311 *et seq.* Permits the Antitrust Division to use a Civil Investigative Demand ("CID") as an administrative subpoena to investigate possible violations of the antitrust laws. As provided in § 1312(a):

"Whenever the Attorney General ... has reason to believe that any person may be in possession, custody, or control of any documentary material ... relevant to a civil antitrust investigation ... he may ... issue ... a civil investigative demand ..."

As stated by Judge Norbye in *Petition of Gold Bond Stamp Co.,* 221 F.Supp. 391, 394 (D.Minn.1963) aff'd 325 F.2d 1018 (8th Cir. 1964):

[T]he Antitrust Civil Process Act ... authorizes the Attorney General or his Assistant in charge of the Antitrust Division to issue a Civil Investigative Demand whenever he has reason to believe that any person under investigation has in his possession any documents relevant to an antitrust investigation ... The Civil Investigative Demand must be in writing and is required to state the nature of the conduct constituting the alleged violation and the provision of law applicable thereto. It also

must define the documents sought with sufficient particularity so that they may be fairly identified and provide a reasonable time to allow the person on whom the demand is served to collect them for inspection ... The Civil Investigative Demand cannot contain any requirement which would be considered unreasonable if contained in a grand jury subpoena duces tecum ...

■ As stated by Judge Rogers in *Finnell v. United States*, 535 F.Supp. 410, 411 (D.Kan.1982):

A presumption of regularity has been recognized to apply to the issuance of CIDs. *American Pharmaceutical Assoc. v. United States Dept. Of Justice*, 344 F.Supp. 9, 12 (E.D.Mich.1971) aff'd 467 F.2d 1290 (6th Cir.1972) (citing *Hyster Co. v. United States*, 338 F.2d 183, 187 (9th Cir.1964); *Lightning Rod Mfrs. Ass'n v. Staal*, 339 F.2d 346, 347 (7th Cir.1964)).

However, it is true that CIDs (like other administrative subpoenas), cannot be used for an improper purpose.

Accordingly, as stated in *Petition of Emprise Corp.*, 344 F.Supp. 319, 321 (N.D.N.Y. 1972) (a CID case):

the government may not subvert the use of its investigative power by reason of political influence or other improper motives. *Chattanooga Pharmaceutical Assn v. United States Department of Justice*, 358 F.2d 864 (6th Cir.1966).

### B. Compliance with § 1312(b)

■ Section 1312(b) requires that the CID demand:

state the nature of the conduct constituting the alleged antitrust violation ... which [is] under investigation and the provision of law applicable thereto.

In this case, the CID document stated succinctly that it was issued:

"to determine whether there is, has been or may be a violation of §§ 1, 2 of the Sherman Act; § 3 of the Clayton Act by conduct of activities of the following na-

ture: Agreements and conduct restraining trade in the gabion and gabion fastening industries."

As the Court stated in *Petition of Gold Bond*, *supra*, involving an analogous statement[1],

[i]t is quite evident that the short and somewhat terse statement as to the conduct of the company being investigated does not specify the particular offense or offenses under investigation. However, in considering the sufficiency of the designation of the conduct under investigation, one must remember that the purposes of the Act are twofold: (1) to enable the Attorney general to determine whether there has been a violation of the antitrust laws, and if so (2) to enable the Attorney general to allege properly the violations in a civil complaint. It is significant that the House Antitrust Committee in its report on this Act stated:

"In the absence of the authority provided for by this legislation, the Department of Justice may be placed in the position of filing a civil complaint without adequate prior information as to the nature of a suspected violation and without certainty that sufficient evidence would be available to justify bringing a civil case." (House Report No. 1386, 87th Cong., Second Sess., p. 4).

Necessarily, therefore, the nature of the conduct must be stated in general terms. To insist upon too much specificity with regard to the requirement of this section would defeat the purpose of the Act, and an overly strict interpretation of this section would only breed litigation and encourage everyone investigated to challenge (*sic* ) the sufficiency of the notice.

*Id.* at 397.

Here, there were meetings and communications between counsel for Maccaferri and the Antitrust Division at which adequate detail was provided to meet the requirements of § 1312(b). It appears well established that the requisite detailed information can be

---

**1.** "Restrictive practices and acquisitions involving the dispensing, supplying, sale or furnishing of trading stamps and the purchase and sale of goods in connection therewith." *Id.* at 397.

provided informally other than in the CID itself. *See Finnell, supra* at 412.

C. *Overbreadth*

■ Maccaferri contends that the CID is overbroad and unduly burdensome. There appears to be no doubt that if the CID is actually overbroad or unduly burdensome, this Court should modify its scope. However, the Antitrust Division "has a relatively light burden in providing the relevance of the CIDs to the ongoing investigation." *Finnell, supra* at 412.

As of the present time, the parties have engaged in no meaningful discussions to attempt to resolve their differences. Each side is, at least for now, presenting the Court with an absolute position. Maccaferri argues that the alleged excessiveness of the CID unenforceable altogether. The Antitrust Division takes the position that inasmuch as Maccaferri has not sought a negotiated modification of the CID scope, the Government is entitled to an Order enforcing the CID as is, without modification.

In regard to overbreadth, neither side is correct. There is no "all or nothing" issue. The Court shall resolve, as discussed herein, the parties' contentions regarding modification of the CID. The CID shall be enforced with any modifications found appropriate.

D. *The "Preconceived Conclusion"*

■ Maccaferri presents the affidavit of one of its attorneys that in a telephone conversation of April 27, 1995, Antitrust Division attorney Douglas Hilleboe stated that the Antitrust Division had concluded that Maccaferri was a violation of Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act. Antitrust Division Attorney Hilleboe has filed an affidavit denying that he said in the April 27 telephone call (or any other time) "that DOJ had reached the conclusion that Maccaferri was in violation of any statute."

This Court does not view lightly the obligation of affiants, especially members of the Bar, to present the court with truthful statements. However, at this time, the Court has no basis on which to resolve the conflict between Maccaferri's counsel's and Mr. Hilleboe's affidavits. Therefore, for present purposes, it will be assumed that Mr. Hilleboe made the statement as alleged by Maccaferri. Even on this assumption, the Court would not set aside the CID.

Such a statement would indicate a predisposition on the part of the staff attorney and/or his impression as to what the Antitrust Division would do with the case. Whatever may be the effect of such an attitude on the ability of the staff attorney to make an unbiased recommendation to his superiors, the Court does not see how this would impact the right of the Antitrust Division to conduct an investigation. Nor, even assuming the statement to have been made, is it reasonable to conclude that the Antitrust Division has, in fact, reached its conclusion. Moreover, even if it could be assumed that the Antitrust Division institutionally were convinced that Maccaferri had violated the antitrust laws, it would still be necessary to investigate to see if evidence were available to enable the Commencement of a judicial proceeding. In view of the statutory language, it is appropriate to use a grand jury subpoena based upon the fact that the United States Attorney believes that the target has committed a crime and is trying to get the evidence to prove it.

In sum, assuming that the alleged statement was made, it does not give Maccaferri immunity from investigation or an excuse for noncompliance with the CID.

E. *Improper Purpose Discovery Request*

Maccaferri claims that it has presented adequate evidence to warrant the court's permitting it to engage into discovery as to the possibility of an improper purpose for the CID. In support of its position, Maccaferri cites three published decisions; in two of which district courts have permitted discovery for such purposes. *Petition of Cleveland Trust Co.*, 1972 Trade Case (CCH) ¶ 73,991 (N.D.Ohio 1969), *Petition of Emprise Corp.*, 344 F.Supp. 319 (W.D.N.Y.1972), and *Associated Container Transp., et al. v. United States*, 502 F.Supp. 505 (S.D.N.Y.1980).

In the *Cleveland Trust* case, the petitioner alleged that there were improper purposes for the CID. The Antitrust Division had submitted an affidavit of the Assistant Attor-

ney General which did not address these issues. Hence, limited discovery was permitted.

However, in *Emprise Corp.*, the Antitrust Division, faced with similar allegations, presented an affidavit adequate to avoid the need for discovery. As states by Judge Henderson in *Emprise:*

> The only case cited by the parties or found by this court wherein interrogatories of the type proposed by Emprise were permitted to be served upon the Department of Justice is *The Matter of the Petition of Cleveland Trust Co.*, C. 68–855 (N.D.Ohio, March 4, 1969). The Assistant Attorney General in charge of the Antitrust Division also submitted an affidavit in that case. That affidavit, however, simply recited that the investigation of Cleveland Trust company was instituted as a result of an independent decision of the Department of Justice. It did not address itself to whether the investigation was either in aid of legislative or political inquiry or some other improper purpose. To that extent, there may have been a question of fact presented for resolution and accordingly that case is distinguishable from the present petition. Whatever reasons the court in the *Cleveland Trust case., supra,* had for permitting those interrogatories to the Department of Justice are not presented in the petition of Emprise. The question of improper motives has been answered by Mr. Comegys' affidavit and, accordingly, the interrogatories are neither necessary not appropriate. *See, American Pharmaceutical v. United States Department of Justice, Antitrust Division; Michigan State Pharmaceutical Assn. v. United States Department of Justice, Antitrust Division,* 344 F.Supp. 9 (E.D.Mich.1971).

*Id.* at 322.

In *Associated Container*, the district judge held that "reasonable discovery is available as a matter of right[2] to petitioners in proceedings to set aside or limit CIDs." *Associated Container, supra* at 509. The *Associated Container* decision also held that even if there were no such right, the Court would grant limited discovery. This was because "petitioners in this action [had] raised facially legitimate objections [an asserted exemption from the antitrust laws] to the authority of the Antitrust Division to investigate their activities" to which the Antitrust Division had not adequately responded. *Id.* at 510.

As stated in *Securities and Exchange Comm. v. Dresser Industries, Inc.,* 628 F.2d 1368, 1388 (D.C.Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980):

> We recognize that discovery may be available in some [administrative] subpoena enforcement proceedings where the circumstances indicate that further information is necessary for the courts to discharge their duty. For example, the Supreme Court in *LaSalle [United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978)]* apparently contemplated some degree of discovery in IRS summons cases to determine the institutional good faith of the IRS in issuing such summonses. However, district courts must be cautious in granting such discovery rights, lest they transform subpoena enforcement proceedings into exhaustive inquisitions into the practices of the regulatory agencies. Discovery should be permitted only where the respondent is able to distinguish that raise doubts about the agency's good faith. Even then, district courts must limit discovery to the minimum necessary in the interests of justice by requiring specific interrogatories or affidavits rather than "full-dress discovery and trial." (Citations omitted)

■ The Antitrust Division argues that the fact that it has submitted affidavits which deny an improper purpose *necessarily* concludes the Court's inquiry. This Court does not accept such a view. This Court concludes that it should not simply accept as conclusive the Antitrust Division's affidavit statements that evidence presented to see if there exists a realistic basis to believe that

---

**2.** This Court does not agree with this holding, which, insofar as appears, has not obtained widespread acceptance. See Judge Green's decision, also rejecting this notion, in *Australia/Eastern U.S.A. Shipping Conference v. United States,* 1981 WL 2048 (D.D.C.1981), 1981–1 Trade Cas (CCH) ¶ 63,943 (D.D.C.1981).

the requested discovery would lead to evidence which would establish an improper purpose for the CID. The Court, therefore, examines each of the grounds upon which Maccaferri basis its contention that discovery is appropriate.

### 1. *The Alleged Unusual Manner of Conducting Investigation*

 Maccaferri presents the affidavits of two attorneys that on March 20, 1995, Antitrust Division attorney Hilleboe states that Assistant Attorney General Bingaman was personally handling the CID. Antitrust Division Attorneys Hilloboe and Steger have filed affidavits denying that the alleged statement was made on March 20, 1995 or any other time.

Maccaferri contends that the alleged personal participation of Assistant Attorney General Bingaman reflects a suspicious and unusual manner of proceeding.

For reasons noted above, this Court will, for purposes of this discussion, assume that Antitrust Division attorney Hilleboe made the Statement. This statement, assumed to have been made by Hilleboe, was sufficient to require Assistant Attorney General Bingaman to file her own affidavit stating whether she was personally involved in the investigation. This is not to imply that her personal (as opposed to general supervisory) participation would be "wrong." However, if she were personally involved, it might, in an appropriate case [3], be necessary for Assistant Attorney General Bingaman to explain why she chose to have a "hands on" role in this investigation rather than others.[4] In any event, Assistant Attorney General Bingaman has filed her affidavit, which, in the context of this case, is sufficient to put the issue to rest.

### 2. *The "Preconceived Conclusion"*

 As discussed above, Maccaferri contends that in a telephone conversation of April 27, 1995, Antitrust Division Attorney Hilleboe states that the Antitrust Division had concluded that Maccaferri was in violation of Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act. The Court finds that, even assuming the statement to have been made, it is not an indication of an improper purpose for the issuance of the CID.

### 3. *Political Influence*

 Maccaferri presents evidence which, it contends, supports a claim that political influence motivated the issuance of the CID. The allegation flows from the following:

a. Assistant Attorney General Bingaman is the spouse of Senator John Bingaman (New Mexico).

b. In 1992 Marlin Glass (of Glass Trucking Company, Inc.) made a $300 contribution to the political Action Committee of the American Trucking Association ("The ATA PAC").

c. The ATA PAC had made contributions to the campaign of John Bingaman in three years prior to Mr. Glass' contribution, to wit, in 1983–84 ($500), in 1985–86 ($500), and in 1988 ($2,500).

d. The ATA PAC made a $1,000 contribution to the campaign of Senator Bingaman in 1994, after the 1992 Glass contribution to the PAC.

e. From 1980 to 1994, Mr. Glass made 14 contributions each of $1,000 or less to political campaigns for candidates other than Senator Bingaman.

f. Mr. Glass is a member of the Glass family that owns Terra Aqua Gabions, a competitor of Maccaferri.

g. In 1987 Senator Nickles of Oklahoma, apparently at the request of his constituent, Glass Wholesalers, Inc., wrote the Department of Commerce expressing concerns about Maccaferri's "illegal business practices."

---

**3.** The Court can Conceive of situations, not here present, in which an explanation would be required.

**4.** There are many possible valid reasons, including a desire to keep one's professional skills sharp, for an Assistant Attorney General to wish to be personally involved in a case from time to time.

h. In 1995 Assistant Attorney General Bingaman authorized the CID at issue.

Even before considering the affidavit of Assistant Attorney General Bingaman, the Court finds not a scintilla of evidence to raise a reasonable suspicion that there was political influence in the authorization of the CID. One would have to believe that prior to authorizing the CID directed to Maccaferri, Assistant Attorney General Bingaman became aware (1) that the ATA PAC had contributed $1,000 to her husband's campaign in 1994, (2) that two years prior to the contribution a person named Marlin glass of Glass Trucking made a $300 contribution to the PAC, and (3) that this Marlin Glass of the trucking company also had an interest in a company named Terra Aqua Gabions which was a competitor of Maccaferri. Then, armed with this knowledge, Assistant Attorney General Bingaman would have to be aware that the CID at issue (one of over 1,000 issued during the current year) was related to Glass' contribution and cause the Antitrust Division to undertake an investigation it would not otherwise have performed to reward the Glass family for that fraction of $300 that ended up in senator Bingaman's campaign fund.

While the allegation of political influence might well be sufficiently baseless to warrant no response, Assistant Attorney General Bingaman has filed an affidavit. She flatly denies any political or improper purpose in regard to the CID. Moreover, she stated in her affidavit that:

Even before I was appointed to the position of Assistant attorney General in 1993, I recognized that the activities of my husband, Senator Jeff Bingaman, with respect to campaigning and fund raising could create the appearance of conflicts of interest with respect to investigations or other matters being handled by the Antitrust Division. Accordingly, to avoid any such appearance of impropriety, beginning in January 1993, I completely segregated myself from all fund-raising activities associated with Senator Bingaman's campaigns. I do not participate in fund-raising activities, and I have taken all possible steps to ensure that I do not obtain information about contribution made to Senator Bingaman or his campaigns. I have no knowledge, apart from what I have learned about the allegations in connection with this proceeding, of any campaign contributions that may have been made to Senator Bingaman's campaign by Marlin Glass, the Glass family, Terra Aqua Gabions, or any political action committees. I do not know, and before this motion was filed had never heard the names of, any of these individuals, nor had I heard of the company. I had no involvement in the Division's initial decision to open an investigation into possible anticompetitive activity by Maccaferri Gabions, Inc. (Maccaferri"), which was made by the Antitrust Division's Office of Operations in the usual manner followed for investigations. I have never discussed the Division's investigation of Maccaferri with any elected Official, including Senator Bingaman.

■ Maccaferri suggests that prior to authorizing a CID, Assistant Attorney General Bingaman has a duty to undertake an exhaustive search of all available data regarding contributors to her husband's campaigns, even down to the level of ascertaining persons who had made contributions to any PAC for years prior to the time that the PAC made a contribution to Senator Bingaman's campaign. Moreover, Maccaferri suggests that once having learned of the connection[5] between this investigation and Senator Bingaman, the Assistant Attorney General is acting improperly by failing to recuse herself from this case. Maccaferri does not provide the Court with authority to require such actions on behalf of Assistant Attorney General Bingaman. Indeed, to suggest that she is barred from cases involving competitors to persons at the "Glass level" of relationship to her husband's campaigns might well render her ineligible to function in any case at all.

In this case, even if someone could conclude that there were a rational allegation of political influence, it is conclusively answered

5. Such as it is.

by the Affidavit of Assistant Attorney General Bingaman.

See *Emprise, supra.*

### 4. *The FOIA Stonewall*

██ Maccaferri argues that the antitrust Division has "stonewalled" its FOIA request. However, the Antitrust Division has provided the affidavit of the Chief of its FOIA Unit who states that Maccaferri's request was handled in the normal course of her duties. Maccaferri is bringing an action to enforce its FOIA rights.[6] It shall receive whatever it may be entitled to under FOIA. The Court does not find the Antitrust Division position or actions regarding Maccaferri's FOIA request to warrant discovery in this case.

### 5. *Overbreadth*

██ Maccaferri argues that the overbreadth of the CID is evidence of improper motivation. The Court does not find the CID, as drafted, significantly different from many subpoenas and equivalents which are narrowed through the process of negotiation and, as necessary, judicial intervention. The CID at issue, while possibly subject to narrowing, does not indicate some extraordinary approach to the investigation.

### 6. *The Merits*

██ Maccaferri presents evidence which it contends indicates that it did not act in violation of the Sherman Act or Clayton Act. This is not the occasion to adjudicate, even on a *prima facie* standard, the substantive merits of any possible Antitrust case against Maccaferri. Nor does the Court find it necessary to require the Antitrust Division to present the basis for its investigative interests.

### 7. *Dismissal of a Counterclaim*

██ Maccaferri asserts that it is the Plaintiff in a civil law suit in which the legal expenses of the Defendant (a Maccaferri distributor) are being funded by Terra Aqua, Maccaferri's competitor. This distrib-

utor had filed an antitrust counterclaim against Maccaferri and has recently decided to dismiss the counterclaim. Based on this happenstance, Maccaferri asks the Court to conclude that the Antitrust Division (not involved in the private law suit) is proceeding in bad faith by seeking to investigate whether Maccaferri has violated the antitrust laws. The Court does not find the private parties' counterclaim dismissal relevant at all.

### F. *Resolution*

This Court has reviewed each of Maccaferri's contentions separately and also considers them together. The Court concludes that not one of them even tends to indicate that discovery into an improper purpose is permitted here. Moreover, all of them taken together do not come close to raising a rational basis to believe that discovery would be anything other than a time consuming exercise in futility. Accordingly, there shall be no discovery. Moreover, subject only to possibly remaining issues as to scope, the CID shall promptly be compiled with.

### G. *Further Procedures*

The Court has concluded that there is no reason for discovery. Nor is there any reason to set aside the CID. The sole possible remaining issue relates to the breadth of the CID.

This Court is well aware of the possibility that a party could utilize a case of this type as a vehicle for interminable delay of an investigation. While the Court cannot conclude that Maccaferri is so acting, there is no reason for any extensive delay.

The Court will not, as suggested by the Antitrust Division. simply order compliance with the CID as drafted. For, until now—regardless of whose fault it may be—there has been no effort by the parties to eliminate or narrow their disputes as to the scope of the CID. The Court will require expeditious efforts to reach agreement or narrow the issues. Of course, any agreement as to scope would be without prejudice to whatever

---

**6.** To avoid procedural complexities, the FOIA issues will be resolved in a law suit separate from this one.

rights Maccaferri may have to seek appellate review of its contention that the CID should not be complied with at all.

The Court will, through the undersigned Judge or a Magistrate Judge as may be appropriate, resolve any unresolved issues so that a final Order can be entered in this case. The final Order will require prompt compliance with the CID (subject to whatever modifications may be agreed upon or Ordered).

The Court does not find that Maccaferri has presented issues of sufficient merit to warrant a stay of the Order requiring compliance pending appeal. As a courtesy to the litigants and to the appellate court, when issuing the final Order this Court will provide a brief stay sufficient to permit Maccaferri to ask the United States Court of Appeals for the Fourth Circuit for a stay pending appeal. However, this Court will recommend that no stay be granted.

III. *CONCLUSION*

For the foregoing reasons:

1. There shall be no discovery in this case.

2. The Court shall after resolution of any issues or to the scope of the CID, issue an Order requiring compliance with Civil Investigative Demand No. 12316.