**UNITED STATES of America**

v.

**Anthony G. MEDEIROS.**

**Crim. No. 88–00153.**

United States District Court,
M.D. Pennsylvania.

March 28, 1989.

---

**20.** Schupak Aff. ¶¶ 11–12; Farkas Aff. ¶ 1; Rosenfeld Aff. ¶ 3.

**21.** Def. Exh. 11

Frederick E. Martin, Asst. U.S. Atty., Lewisburg, Pa., for U.S.

D. Toni Byrd, Federal Public Defender's Office, Harrisburg, Pa., for Anthony G. Medeiros.

## ORDER

MUIR, District Judge.

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

#### I. Introduction.

Defendant Anthony G. Medeiros requests that we sentence him to a term of imprisonment in this case that is below the range of imprisonment dictated for this case by the federal sentencing guidelines. We must decide whether we have the authority to sentence Medeiros to a term of imprisonment less than that prescribed by the sentencing guidelines, and, if so, whether we choose to exercise this discretion.

#### II. Procedural and Factual History.

On September 16, 1988, a grand jury returned a one-count indictment charging Medeiros with escaping on or about August 30, 1988, from the farm camp at the United States Penitentiary at Lewisburg, Pennsylvania in violation of 18 U.S.C. § 751(a). Medeiros on December 28, 1988, entered a plea of guilty to the one count indictment.

The Court received on March 3, 1989, a copy of the pre-sentence report prepared in this case. On March 7, 1989, Medeiros filed a notice of intent to seek a downward departure from the guideline range and to seek a concurrent sentence. A pre-sentence conference was held with the Court on March 8, 1989. On March 15, 1989, the United States filed a brief in opposition to Medeiros's request for a downward departure from the guideline range and for a concurrent sentence. The United States did not address the issue of a concurrent sentence in its brief. Also on March 15, 1989, a pre-sentence hearing was conducted. Medeiros filed a reply brief concerning his request for a downward departure from the guideline range and for a concurrent sentence on March 20, 1989.

Medeiros concedes that the sentencing guideline imprisonment range of 24 to 30 months calculated by the probation officer and set forth in the pre-sentence report is computed correctly pursuant to the Sentencing Reform Act of 1984 and the Federal sentencing guidelines.

## III. Discussion.

The offense in this case was committed after November 1, 1987, and therefore the sentence we impose is governed by the Sentencing Reform Act of 1984 and the sentencing guidelines promulgated pursuant thereto. *See United States v. Uca,* 867 F.2d 783 at 785 (3d Cir.1989). The Sentencing Reform Act authorizes a departure from the sentence range prescribed by the federal sentencing guidelines if "... the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The United States Court of Appeals for the Third Circuit has indicated that departures from the sentencing guideline range are the exception rather than the rule. *See United States v. Uca,* at 786–87. The Court of Appeals has also indicated that a district court may depart from the sentencing guideline "[w]hen a [district] court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm." Chapter 1, Part A, Introduction 4(b) of the Federal Sentencing Guidelines (quoted in *United States v. Ryan,* 866 F.2d 604 at 607 (3d Cir.1989)).

■ The Court of Appeals has tacitly admitted that it is difficult for a district court to determine whether "... there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." *See United States v. Ryan,* at 610 ("[H]ere, as in many situations, there is really no way of knowing whether or not the Commission would view the circumstances of this case as 'unusual.'"). It is not entirely clear to us

what the phrase "adequately taken into consideration" means. The Court of Appeals has apparently interpreted this phrase to mean that the district court should examine whether "the Guidelines ... give adequate consideration" to an allegedly aggravating or mitigating circumstance which a party claims should warrant a departure from the guidelines. *See United States v. Uca,* at 789. The formulation indicated by *United States v. Uca* appears to us to be more manageable because the inquiry under this formulation is whether the guidelines give adequate consideration to a particular circumstance rather than whether the Sentencing Commission "adequately t[ook] into consideration" a particular circumstance, 18 U.S.C. § 3553(b). With the understanding that our function is to determine whether the guidelines "give adequate consideration" to the allegedly mitigating circumstances which Medeiros contends warrant a downward departure from the guidelines in this case, we turn to the allegedly mitigating circumstances presented by him.

A. Whether the sentencing guidelines give adequate consideration to the difference between walking away from a non-secure institution and escaping from a secure institution.

■ Medeiros asserts that the Sentencing Commission did not adequately consider the difference between walking away from a non-secure institution such as the farm camp at the Lewisburg Penitentiary and escaping from a secure institution such as the Lewisburg Penitentiary. Pursuant to the discussion above, we will rephrase this assertion as whether the sentencing guidelines give adequate consideration to the difference between walking away from a non-secure institution and escaping from a secure institution and we will analyze this issue as rephrased.

Medeiros sets forth two arguments in support of his contention that the guidelines do not give adequate consideration to the difference between walking away from a nonsecure institution and escaping from a secure institution. First, Medeiros points

out that an individual who escapes from a secure institution is assigned the same guideline range as an individual who walks away from a non-secure institution provided that their "Criminal History Categories" are the same. Medeiros argues that an escape from a secure institution is a much more serious offense than walking away from a non-secure institution. Medeiros adds that a 24 to 30 month sentence for walking away from a non-secure institution is unduly harsh. The implication of Medeiros's argument is that the guideline range of 24 to 30 months is predicated upon someone escaping from a secure institution and for that reason, we should impose a sentence upon him which is less than the guideline range because his conduct only involved walking away from a non-secure institution.

There are two problems with this argument by Medeiros. First, we are of the view that walking away from a non-secure institution involves less serious conduct than escaping (or attempting an escape) from a secure institution because escaping (or attempting to escape) from a secure institution generally involves some or all of the following while walking away from a non-secure institution frequently involves none of the following: (1) a conspiracy with individuals inside or outside of the institution; (2) the threat or use of violence against other inmates or correctional officials; (3) the possession of contraband by the inmate or inmates planning to escape; and (4) a breach of the security of the institution which results in damage to federal property. All four of the factors just listed constitute separate federal criminal offenses. In addition, the use or threat of force against any person during an escape results in an enhanced sentence for the crime of escape under the guidelines as they currently exist. *See* sentencing guidelines, § 2P1.1(b)(1). Because an individual who escapes from a secure institution will generally have committed one or more of the additional offenses just listed, such individual almost certainly will be assigned a higher guideline range than an individual who walks away from a non-secure institution. In the instance in which an individual

escapes from a secure institution without committing any of the additional offenses listed above, it does not appear to us to be irrational to assign to such an individual the same guideline range as that which would be assigned to an individual who walks away from a non-secure institution.

The second difficulty with Medeiros's argument that the guidelines do not give adequate consideration to the difference between walking away from a non-secure institution and escaping from a secure institution is the following: Medeiros's argument in this regard is based upon his contention that the guideline range applicable to him in this case, 24 to 30 months, is unduly harsh for walking away from a non-secure institution. However, if Medeiros's prior criminal record consisted of only the conviction which had resulted in his incarceration at the farm camp at Lewisburg, his Criminal History Category would have been III instead of V and his guideline imprisonment range would have been 12 to 18 months rather than 24 to 30 months. In short, the harsh guideline range Medeiros faces is due in large part to his prior criminal record rather than the failure of the sentencing guidelines to differentiate between walking away from a non-secure institution and escaping from a secure institution. We are of the view that a sentencing range of 12 to 18 months for an individual who walks away from a non-secure institution is not unduly harsh. Medeiros does not make a general attack upon the computation of one's Criminal History Category under the guidelines and we will not consider such sua sponte. (Medeiros raises in his reply brief for the first time a tangential issue related to his Criminal History Category, and we will discuss that below.)

Medeiros makes a second argument in support of his contention that the guidelines do not give adequate consideration to the difference between walking away from a non-secure institution and escaping from a secure institution. That argument is that the Sentencing Commission has publicly sought comment concerning an amendment to the sentencing guidelines which would

reduce the offense level for an individual who escapes or walks away from a non-secure institution from the offense level which currently exists for all escapes from both secure and non-secure institutions. We are of the view that simply because the Sentencing Commission is considering a reduction in the offense level for escapes from non-secure institutions does not automatically indicate that the guidelines do not give adequate consideration to the difference between walking away from a non-secure institution and escaping from a secure institution. For the reasons expressed above, we are of the view that the guidelines do give adequate consideration to the difference between walking away from a non-secure institution and escaping from a secure institution.

B. Whether the particular facts of this case, walking away to see a child who had been suddenly hospitalized, warrants a downward departure from the sentencing guideline range.

■ Medeiros asserts that we have the authority to impose a sentence upon Medeiros which is less than the guideline range because of the particular facts surrounding Medeiros's walking away from the farm camp. Medeiros contends that those facts are as follows: (1) Medeiros was informed in the morning on August 30, 1988, that his five-year-old son had been taken earlier that morning to the emergency room of a hospital in Warwick, Rhode Island; (2) Medeiros shortly thereafter saw Edward Cox, the senior officer at the farm camp, and Medeiros asked Cox whether Medeiros could talk to him for a moment; (3) Cox told Medeiros that Cox did not have time to talk; (4) Medeiros intended to ask Cox for a furlough to go visit his son; and (5) after Cox stated that Cox did not have time to speak with Medeiros, Medeiros walked away from the farm camp and went to Rhode Island to see his son. Medeiros does not assert that he told Cox why he wished to talk to Cox, and Medeiros does not claim that he attempted to speak with any other farm camp official regarding a furlough. Accepting all the above facts as asserted by Medeiros as true, we are of the

view that the facts of this case are not sufficiently atypical to warrant a downward departure from the guideline range.

C. Whether a concurrent sentence is warranted in this case.

■ Medeiros concedes that the decision whether to make Medeiros's sentence in this case concurrent or consecutive to the sentence he is currently serving is within our discretion. We are of the view that making Medeiros's sentence in this case concurrent to the sentence he is currently serving would depreciate the seriousness of his walking away from the farm camp. Additionally, we are of the view that it is improper to make Medeiros's sentence in this case concurrent to the sentence he is currently serving as a method of circumventing the federal sentencing guidelines and imposing a sentence which, in effect, would be shorter than that prescribed by the sentencing guidelines for this case. Such a practice has the effect of undermining the primary goal of the sentencing guidelines: reducing sentence disparity throughout the United States. *Cf. United States v. Uca,* at 787. We decline to make Medeiros's sentence in this case concurrent to the sentence he is currently serving.

D. Whether the guidelines give adequate consideration to the interplay between guideline sections 2P1.1 and 4A1.1(d) and 4A1.1(e).

■ Medeiros argues for the first time in his reply brief that the enhancement of his Criminal History Category pursuant to guideline sections 4A1.1(d) and 4A1.1(e) shows that the guidelines do not give adequate consideration to the interplay between these two sections and section 2P1.1 (which section determines the offense level for an individual convicted of escape pursuant to 18 U.S.C. § 751(a)). Initially, we note that it is improper for a party to present a new argument in his or her reply brief. This argument is only very tangentially related to the arguments raised by the United States in its brief in opposition. Nonetheless, we will address this argument raised by Medeiros.

Section 4A1.1(d) requires that two points be added to an individual's Criminal History Category score if his or her current offense was committed while still serving any criminal sentence. Section 4A1.1(e) requires that one point be added to an individual's Criminal History Category score if his or her current offense is committed less than two years after release from imprisonment on a sentence of at least 60 days or if the current offense is committed while the individual is still in confinement on such a sentence. It is difficult to grasp precisely what argument Medeiros is making. It appears that Medeiros is asserting that when sections 4A1.1(d) and 4A1.1(e) are applied in a case where the individual is being sentenced for escape, the individual is subject to a type of "double counting." We disagree with Medeiros's argument that impermissible double counting is occurring. We are of the view that the guidelines give adequate consideration to the interplay among these sections of the guidelines. Our view is based in large part upon the discussion on page 111, particularly footnote No. 1, of Exhibit A appended to Medeiros's notice of intent to seek a downward departure from the guideline range and to seek a concurrent sentence. (Exhibit A appended to Medeiros's notice of intent is apparently an internal memorandum to the Sentencing Commission.)

NOW, THEREFORE, IT IS ORDERED THAT:

1. Medeiros's request for a downward departure from the guideline range is denied.

2. Medeiros's request that the sentence in this case be made concurrent to the sentence he is currently serving or any other sentence which has previously been imposed upon him is denied.