**UNITED STATES of America, Petitioner,**

v.

**John D. WITMER, William J. Kelly, and Harsco Corporation, Respondents.**

Misc. No. 93–071.

United States District Court, M.D. Pennsylvania.

Sept. 9, 1993.

Michael F. Hertz, U.S. Dept. of Justice, Civil Div., Commercial Litigation Branch, Washington, DC, Michael J. Kane, Asst. U.S. Atty., Harrisburg, PA, Stephen D. Altman, U.S. Dept. of Justice Commercial Litigation Branch, Civil Div., Dennis L. Phillips, Steven A. Maddox, Frank W. Hunger, U.S. Dept. of Justice, Civil Div., Washington, DC, for U.S.

Laurence W. Dague, Raja G. Rajan, Shumaker & Williams, P.C., Harrisburg, PA, for John D. Witmer.

Marybeth Sullivan, Washington, DC, for William J. Kelly.

Marc G. Tarlow, Kain, Brown & Roberts, York, PA, Daniel G. Jarcho, T. Mark Flanagan, Jr., McKenna & Cuneo, Washington, DC, for Harsco Corp.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court are the motions of Respondents Witmer and Kelly (hereafter "Witmer/Kelly" or "Respondents") for leave to serve discovery on Petitioner and to stay enforcement of the CIDs issued with respect to them. Also pending is the Government's motion to strike Witmer and Kelly's joint reply to the discovery motion or, in the alternative, for leave to file a sur-reply. Briefs have been filed and the motions are ripe for disposition.

### Background

This case involves a dispute over the issuance by the Attorney General and attempted enforcement by the Justice Department of several Civil Investigative Demands ("CIDs").

■ CIDs are a pre-complaint discovery tool made available to the Government by statute in several particular contexts. *See* 31 U.S.C. § 3733 (CID authority to investigate allegations of fraud in military procurement contracts); 15 U.S.C. § 1314(f) (CID authority to investigate antitrust violations); 15 U.S.C. § 57b–1(c)(1) (CID authority to investigate Federal Trade Commission Act violations). The CID allows the Government, prior to the institution of suit, to subpoena witnesses and documents and otherwise gather information normally obtained during pretrial discovery. The purpose of the CID is to "enable the Government to determine

whether enough evidence existed to warrant the expense of filing [a civil] suit, as well as to prevent the potential Defendant from being dragged into court unnecessarily." H.R.Rep. 660, 99th Cong., 2d Sess. 26 (1986).

The particular CIDs involved in this case were issued as part of a Justice Department investigation into potential wrongdoing by Harsco Corporation ("Harsco"). Particularly, the CIDs before the court were issued to the Harsco Corporation, John Witmer, a current Harsco employee, and William Kelly, a former Harsco employee.[1]

The investigation centers around a Harsco contract to sell 15,000 vehicles to the United States Army. Shortly after being awarded the contract, Harsco notified the government that it would seek an adjustment in the contract price because its initial bid on the vehicles did not include excise taxes on the vehicles sold after 1988.[2] The contract officer on the project rejected the claim but Harsco appealed to the Army Services Board of Contract Appeals (ASBCA), which awarded Harsco the adjustment that it sought. The Government is investigating whether, in seeking the contract adjustment, Harsco fraudulently misrepresented to the contract officer and to ASBCA that the disputed excise taxes were not included in the calculation of its initial bid.

These allegations are being contested on several fronts. First, the Army has sought to reopen the ASBCA decision. ASBCA has yet to issue a decision on the motion to reopen. Second, allegations of criminal wrongdoing arising out of the contract adjustment apparently are before a grand jury in Michigan. Finally, the Justice Department is conducting the instant investigation to determine whether or not to bring a civil fraud action against Harsco under the False Claims Act, 31 U.S.C. § 3729 *et seq.*

---

1. Initially, the Government filed separate actions to enforce the CIDs against Witmer (Misc.Action No. 93–71) and Kelly (Misc.Action No. 93–72). Subsequently, Harsco filed an action to set aside the CID issued to it. (Misc.Action No. 93–112). Because these actions involved the same basic facts and largely the same legal issues, this court consolidated the three separate actions into one. (Misc.Action No. 93–71).

2. The excise tax at issue was due to expire in 1988. As of the date that contract bids were submitted, legislative re-authorization of the excise tax had not taken place. A representative of Harsco attempted to contact an Army official shortly before submission of Harsco's bid to determine if the tax should be included in the bid price. There is a dispute as to whether a response was communicated to Harsco before Harsco submitted its bid.

Pursuant to this investigation, the Attorney General (Acting Attorney General Stuart Gerson) issued CIDs to Harsco and to various Harsco employees ordering them to turn over certain information and documents and to submit to oral examinations. *See* 31 U.S.C. § 3733 (authorizing and establishing the procedure for the use of CIDs in False Claims Act cases). After Witmer and Kelly refused to submit to oral examination, the Government filed actions to enforce the Witmer and Kelly CIDs.[3] Subsequently, Harsco filed its action to set aside the CID issued to it. All three actions were consolidated by this court.

### Discussion

**I. Witmer/Kelly Motion for Leave to Serve Discovery**

**A. Government's Motion to Strike**

■ As an initial matter, the Government has moved to strike Respondents' reply as improper.[4] The Government claims that the reply is improper because it raises issues that should have been argued in Respondents' initial brief. The court agrees.

In their brief in support of their motion for discovery, Respondents claim that they are entitled to discovery as a matter of right in these proceedings. The bulk of Respondents' seven-page initial brief is devoted to that argument. In that brief, Respondents also argue, in the alternative, that they are entitled to limited discovery because they "have reason to believe" that the Government is using the CIDs for an improper purpose. (Brief in support of motion to serve discovery at 5 n. 5). Respondents asserted this alternative argument in a single footnote in their initial brief. The allegation was utterly devoid of specificity and factual support, by affidavit or otherwise. It was not until they filed their reply brief that Respondents chose to support their alternative theory.[5]

This clearly was improper. "It is improper for a party to present a new argument in his or her reply brief." *United States v. Medeiros,* 710 F.Supp. 106, 110 (M.D.Pa.), *aff'd,* 884 F.2d 75 (3d Cir.1989). It is also improper for a party to make new factual assertions in a reply brief because doing so "leaves the opposing party no opportunity to respond." *Center Dev. Venture v. Kinney Shoe Corp.,* 757 F.Supp. 34, 36 (E.D.Wis. 1991).

■ In this case, the alternative argument came as no surprise to Respondents. This argument was not raised for the first time in the Government's opposition brief; rather, Respondents themselves raised this alternative contention in their initial brief. Having done so, Respondents had an obligation to set forth both factual and legal support for their argument in that initial brief. A party may not merely allude to its claims in its initial brief and then argue them in detail in its reply, giving the opposing party no opportunity to respond. *Medeiros,* 710 F.Supp. at 110; *Center Dev. Venture,* 757 F.Supp. at 36. Principles of efficiency and sound administration do not allow such practices.

■ In some instances, the appropriate remedy in a situation such as this would be to allow the reply to stand and to grant the opposing party the opportunity to file a sur-reply. Indeed, in the alternative, the Government has requested just such relief. In this case, however, the court believes that the appropriate course is to strike Respondents' reply brief. When they filed their initial brief, Respondents clearly were aware that the Government would argue that Respondents' suggested standard was inappropriate for the instant proceedings. Harsco and its employee CID recipients have litigated the exact same discovery issue raised here in district courts in Ohio and Michigan. In each instance, the Government has argued that Respondents' alternative argument em-

---

3. The Government also has moved to enforce CIDs issued to other Harsco employees in courts in the Southern District of Michigan and in the Southern District of Ohio.

4. In the alternative, the Government has moved for leave to file a sur-reply.

5. At twenty-six pages with a number of attached exhibits, the reply is wholly out of proportion to Respondents' initial seven-page brief and addresses few of the issues initially argued.

bodies the appropriate standard for granting discovery.[6] Respondents also should have realized that there was a significant chance that this court would reject their primary argument and reach their alternative contention. Under these circumstances, the court does not believe it is appropriate to allow the reply brief to stand.

Accordingly, Respondents' reply brief is deemed improper and will be stricken. The court will decide the merits of Respondents' motion for discovery based on their initial brief and the Government's opposition.

### B. Discovery as of Right

■ CIDs are a form of administrative subpoena. *Federal Trade Comm'n v. Invention Submission Corp.*, 965 F.2d 1086, 1087 (D.C.Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993). As a general rule, proceedings to enforce administrative subpoenas are summary. *NLRB v. Interstate Dress Carriers, Inc.*, 610 F.2d 99, 112 (3d Cir.1979). In such summary proceedings, a subpoena recipient does not have a right to discovery in the normal course of events. *Id.* Rather, a subpoena recipient is entitled to *limited* discovery only after making a *substantial* and *supported* showing that enforcement of the subpoena would work an abuse of the Court's process. *Id.; SEC v. Wheeling–Pittsburgh Steel Corp.*, 648 F.2d 118, 127–28 (3d Cir.1981) (en banc).

■ In spite of the above-cited precedent, Witmer/Kelly argue that, as a matter of right, they are entitled to the full panoply of discovery available under the Federal Rules of Civil Procedure. Witmer/Kelly base their argument on 31 U.S.C. § 3733(j), which provides that "[t]he Federal Rules of Civil Procedure shall apply to any petition under this subsection, to the extent that such rules are

not inconsistent with the provisions of this section." Witmer/Kelly also rely on a portion of legislative history,[7] which provides:

> Section 5(e) of the Antitrust Civil Process Act (15 U.S.C. § 1413(c)) makes the Federal Rules of Civil Procedure applicable to any proceeding in the district court to modify or set aside a civil investigative demand.... This application of the Rules includes the right to discovery afforded by Rules 26–37.

S.Rep. No. 803, 94th Cong., 2d Sess. 29 (1976).

This court is not persuaded that the above statutory language and legislative history were meant to rewrite the ordinary rules for enforcement of administrative subpoenas to provide a CID recipient with the right to conduct routine discovery as if the petition were a civil action. *United States v. Seitz*, No. MS2–93–063, slip op. at 5, 1993 WL 501817 (Graham, J.) (S.D.Ohio, E.Div., Aug. 25, 1993). Rather, this court believes that in all but the most extraordinary case, Congress intended to make the Federal Rules of Civil Procedure available to the CID recipient for use as a shield, not as a sword.

■ In the ordinary case, the importance and function of the discovery provisions of the Federal Rules of Civil Procedure is to protect the CID recipient from discovery requests which are vexatious or overbroad. Congress recognized the broad powers it was granting the Government in the CID statutes. Accordingly, Congress built various protections into the CID statutes to protect recipients from onerous requests for production or from being forced to divulge information subject to privilege under the Federal Rules. *See, e.g.,* 31 U.S.C. § 3733(b)(1)(A) and (B) (material protected from disclosure pursuant to grand jury subpoenas or discov-

---

**6.** In each case, the Government also has asserted that the CID recipients are not entitled to discovery under that standard.

**7.** The quoted provision actually relates to Antitrust CIDs but is also relevant in the context of the False Claims Act. The False Claims Act discovery provision, though not identical to, closely parallels, the Antitrust CID discovery provision: "To the extent that such rules may have application and are not inconsistent with the provisions of this chapter, the Federal Rules of Civil Procedure shall apply to any petition under this chapter." 15 U.S.C. § 1314(f). Congress modeled the False Claims Act CID after the Antitrust CID provisions and intended the legislative history and case law interpreting the Antitrust CID provision to "fully apply" to the False Claims Act CID provision. S.Rep. No. 345, 99th Cong., 2d Sess. 33 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5298.

ery requests under the Federal Rules of Civil Procedure not subject to CID request to the extent that these limits were "appropriate and consistent with the provisions and purposes of [CID statute]"); 31 U.S.C. § 3733(b)(2) (disclosure of material pursuant to CID does not waive any "right or privilege ... to resist discovery of trial preparation materials"); 31 U.S.C. § 3733(j) (cited above). In most cases, these provisions adequately protect a CID recipient without undermining the purposes of the CID statute.

■ To allow the recipient of a CID to conduct routine discovery as of right would undermine the very purposes the CID scheme was designed to serve. The CID provisions of the False Claims Act were designed to provide the Government with a pre-filing information-gathering tool to combat perceived widespread fraud against Government in military procurement contracts. S.Rep. No. 345, 99th Cong., 2d Sess. 1986, *reprinted in* 1986 U.S.C.C.A.N. 5266; H.R.Rep. No. 660, 99th Cong., 2d Sess. 26 (1986). Congress was concerned that investigation of such fraud was being hampered by "serious roadblocks to obtaining information as well as weaknesses in both investigative and litigative tools." 1986 U.S.C.C.A.N. at 5269. "Currently, some cases are weeded out and not filed because information is missing—information that might have turned up through pre-suit investigation if the tools were available." *Id.* at 5271.

One clear problem was the limited investigative resources of the Government.

[P]erhaps the most serious problem plaguing effective enforcement is a lack of resources on the part of Federal enforcement agencies.

Federal auditors, investigators, and attorneys are forced to make 'screening' decisions based on resource factors. Allegations that perhaps could develop into very significant cases are often left unaddressed at the outset due to a judgment that devoting scarce resources to a questionable case may not be efficient. And with current budgetary constraints, it is unlikely that the Government's corps of individuals as-

signed to anti-fraud enforcement will substantially increase.

*Id.* at 5272.

Finally, Congress determined that a critical shortfall of the pre-existing scheme was the extent to which large corporate interests could overwhelm the limited Government investigative resources by devoting massive resources to combat and/or hinder Government investigations into allegations of misconduct.

An additional problem noted by hearing witnesses, exists when large, profitable corporations are the subject of a fraud investigation and able to devote many times the manpower and resources available to the Government. This resource mismatch was recognized by DOD Inspector General Joseph Sherick who said that in far too many instances the Government's enforcement team is overmatched by the legal teams major contractors retain.

*Id.* at 5273.

With these concerns motivating Congress to pass the CID provision, it is highly unlikely that Congress intended to allow a simple action to enforce a pre-trial CID to turn into full-scale litigation, requiring Government attorneys to spend scarce resources complying with discovery requests of individuals or corporations not yet subject to suit. Indeed, the instant proceedings, in which motions, counter-motions, and hundreds of pages of briefs have already been filed, are a perfect example of the type of conflict that CIDs, as pre-filing investigative tools, are supposed to avoid. Congress intended the CID to be a tool which would allow the Government to gather information about potential fraud against the Government quickly and efficiently. If every recipient of a CID were afforded the full measure of discovery accorded litigants in a civil action, the efficiency and economy intended under the CID scheme would quickly evaporate.

■ Accordingly, the court believes that Congress did not intend to displace the summary proceedings generally employed in proceedings to enforce administrative proceedings. To the extent that Congress intended the Federal Rules of Civil Procedure to gov-

ern these proceedings, they were meant primarily to protect recipients from having to face vexatious or onerous requests for discovery or from being required to disclose privileged information.

■ This court believes that the standard for granting discovery in this case is that set forth by the court in *Interstate Dress Carriers*, 610 F.2d at 112, and *Wheeling–Pittsburgh Steel*, 648 F.2d at 127–28. Thus, before Witmer/Kelly will be permitted even limited discovery, they must make a *substantial* and *supported* showing that enforcement of the subpoena would work an abuse of the Court's process. *Id.* *Accord, Australia/Eastern U.S.A. Shipping Conference v. United States*, 32 Fed.R.Serv.2d 253 (D.D.C. 1981); *Australia/Eastern U.S.A. Shipping Conference v. United States*, 1982–1 Trade Cas. (CCH) ¶ 64,721, 1981 WL 2212 (D.D.C. 1981); *Finnell v. United States Dep't of Justice*, 535 F.Supp. 410, 415 (D.Kan.1982).

Witmer/Kelly cite several cases that, in broad terms, state that CID recipients have a right to discovery in accordance with the Federal Rules. *Associated Container Transp., Ltd. v. United States*, 502 F.Supp. 505 (S.D.N.Y.1980), *rev'd on other grounds*, 705 F.2d 53 (2d Cir.1983); *In re Petition of Cleveland Trust Co.*, 1972 Trade Cas. (CCH) ¶ 73,991, 1969 WL 230 (N.D.Ohio 1969). In *Associated Container*, the court stated that "reasonable discovery is available as a matter of right to petitioners in proceedings to set aside or limit CIDs." 502 F.Supp. at 505. In *Cleveland Trust*, the court held that the Federal Rules of Civil Procedure were applicable to proceedings to set aside or modify a CID. The court then stated that "[t]his application of the rules includes the right to discovery afforded by Rules 26–37" of the Federal Rules of Civil Procedure. 1972 Trade Cas. ¶ 73,991, at 92,121.

On closer examination, however, the language of these cases is broader than the actual relief afforded by the courts. Neither the *Cleveland Trust* nor the *Associated Con-* tainer court actually allowed the CID recipient the full measure of discovery that they would have been permitted under the Federal Rules. In *Cleveland Trust*, the court allowed the CID recipient only discovery with respect to the identity of persons who participated in the decision to investigate the recipient and the identification of documents relating to this decision. *Id.* This discovery was allowed based on evidence that the investigation was initiated at the behest of a member of Congress.

In *Associated Container*, the court recognized that "[t]he purpose of the [Antitrust] CID procedure is to allow the [Government] to investigate antitrust violations without prematurely becoming involved in full-blown litigation. That purpose would be defeated if extended discovery were permitted to delay unduly CID enforcement proceedings." 502 F.Supp. at 510. Nevertheless, the court granted the CID recipient an opportunity to serve interrogatories, finding that the CID recipients had raised "facially legitimate objections" to the jurisdiction of the Antitrust Division to investigate the recipient's conduct and that the Antitrust Division attorneys had failed to file an affidavit demonstrating that the investigation was within the jurisdiction of the Division.

The actual scope of discovery allowed in the above cases is consistent with this court's view that wholesale discovery in CID enforcement proceedings would, in fact, be inconsistent with the purposes of the CID statutory scheme and would undermine its effectiveness. To the extent that the broad language of the above cases is inconsistent with this court's interpretation of the statute, this court respectfully disagrees.[8]

## C. Right to Limited Discovery Based on Abuse of Process

In the alternative, Witmer/Kelly argue that, if they are not entitled to discovery as of right, they are entitled to limited discovery in this case to show that the CIDs have been

---

8. To the extent that the legislative history of the 1976 Antitrust CID amendments cite with approval *Cleveland Trust* and *Hyster Co. v. United States*, 338 F.2d 183, 186 (9th Cir.1964), this court believes that Congress intended to approve the use of the discovery rules primarily as a source of protection for privileged information and from vexatious or overbroad requests for information. S.Rep. No. 803, 94th Cong., 2d Sess. 28–29 (1976).

issued for an improper purpose. As discussed earlier, in their initial brief, Respondents failed to provide any factual or legal support for their argument that the CIDs were issued for an improper purpose. Accordingly, Respondents have not demonstrated their entitlement to even limited discovery in this case.[9] Therefore, Respondents' motion for discovery will be denied.

## II. Witmer/Kelly Motion for Stay [10]

Before the Witmer and Kelly actions were consolidated with the Harsco petition to set aside the Harsco CID, Witmer and Kelly moved to stay proceedings with respect to them. They reasoned that, if the Harsco CIDs were invalid, then the CIDs issued to them would be invalid for the same reasons. Because the actions have been consolidated, the motion for stay would serve no purpose. Accordingly, it will be denied.

### *ORDER*

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

(1) The Government's motion to strike Respondents' reply to its motion to take discovery is **GRANTED.** Respondents' reply to said motion is stricken;

(2) Respondents' motion for leave to take discovery from the Government is **DENIED;**

(3) Respondents' July 29, 1993 motion to supplement the record with respect to their stay motion is **GRANTED;** and

(4) Respondents' motion for a stay of these proceedings is **DENIED.**

---

9. The court has reviewed Respondents' reply brief. Even if the brief were proper, the court is not persuaded that Respondents have demonstrated a right to even limited discovery.

10. On July 29, 1993, Respondents filed an unopposed motion for leave to supplement the record with respect to their stay motion. That motion will be granted.